248 P.3d 36 (2011)
240 Or. App. 586
Albert KNIGHT and Carol Knight, Plaintiffs-Respondents,
v.
Bill NYARA and Robbie Nyara, Defendants-Appellants.
062833; A138945.
Court of Appeals of Oregon.
Argued and Submitted March 17, 2010.
Decided February 16, 2011.
*37 Barry L. Groce, Portland, argued the cause for appellants. With him on the briefs was McEwen Gisvold LLP.
Norman R. Hill argued the cause for respondents. With him on the brief were Wesley A. Hill and Martinis & Hill.
Before WOLLHEIM, Presiding Judge, and BREWER, Chief Judge, and SERCOMBE, Judge.[*]
BREWER, C.J.
Defendants appeal from a judgment dismissing their counterclaim for trespass, construing an express easement over a portion of their property, and enjoining defendants from using the portion of their property subject to the easement. In three assignments of error, defendants argue, first, that the trial court erred by construing the word "exclusive" in the easement to prohibit them from using all of the land included within the easement; second, that the trial court erred in determining that plaintiffs' use of the easement area was reasonable under the terms of the easement; and, third, that the court erred in dismissing their counterclaim for trespass. On de novo review, ORS 19.415(3) (2007),[1] we reverse in part and otherwise affirm.
Plaintiffs originally owned 10 acres of land on a gravel bar within the meander line of the South Santiam River. That parcel was bounded to the south by the river and to the north by a county road. The parcel was swampy and wet most of the year owing to its proximity to the river, a high water table, and the presence of a natural drainage way running east to west across the parcel. The drainage way had historically been a channel of the South Santiam River. After purchasing the property, plaintiffs excavated a pond *38 on the drainage way, and they used the excavated material to build an elevated driveway with sloping embankments on each side. The embankment operates as a dam and makes up the western end of the pond. Plaintiffs installed a culvert under the driveway that followed the east-to-west line of the drainage way, and the culvert was connected, by a ninety-degree connector on its eastern end, to a "stand pipe" that plaintiffs installed inside the pond. When the water level in the pond would rise to the top of the stand pipe, water would then drain through the pipe into the culvert; water cannot travel through the culvert unless it rises above the stand-pipe because of the ninety-degree connector which seals off the eastern end of the culvert pipe. The culvert's western end empties into the natural drainage way.
The pond receives its water from the South Santiam River, and the level of water in the pond fluctuates in accordance with the level of water in the river. River water does not flow into the pond through a channel, but rather flows underground through the loose gravel soil. At times, plaintiffs pumped water from the pond into sprinklers that they used to irrigate the sloping embankment and other parts of their property. Plaintiffs planted vegetation on the slopes of the embankment to help control erosion, along with ornamental plants around the property, and they watered that vegetation with water drawn from the pond. Plaintiffs installed a water spigot on their property to facilitate the watering. Plaintiffs' watering draws down the level of the pond, thereby allowing fresh water to flow underground from the river into the pond. Plaintiffs stocked the pond with fish and would sometimes draw down the level of the pond during the summer months to allow fresh water in to benefit the health of the fish. Plaintiffs also pumped water out because allowing in fresh water would lower the temperature of the pond, mitigating the growth of algae blooms.
While they had fish in the pond, plaintiffs placed a grill over the top of the stand pipe to prevent the fish from flowing into the culvert when the water level topped the level of the stand pipe. Plaintiff Albert Knight testified that he did not use the grill to filter out the weeds that grew in the pond from the water flowing into the culvert, because those weeds would clog the grill and cause the water level to "build up and blow out the driveway."
In 1995, plaintiffs partitioned the property into three lots, as shown in the map below.

Plaintiffs retained Parcel 3, the parcel that included the pond, their home, and a portion of the elevated driveway. Plaintiffs sold the adjoining parcel, Parcel 2, to defendants *39 in 2005. At that time, the pond was already built and had been used by plaintiffs, as described above, for nearly ten years. We describe the lay of the land and the nature of the pond in some detail because, as discussed below, the way that water drains across the parcels and the way that the pond affects that drainage, forms the basis of defendant's counterclaim for trespass. Parcel 2 is downstream from parcel 3 at a lower elevation and is bounded on the south by the South Santiam River, to the north by the county road, and to the east by the elevated driveway and plaintiffs' property line. The natural drainage way from parcel 3 lies across parcel 2, proceeding west from the culvert installed by plaintiffs at the bottom of the elevated driveway. The drainage way traverses the width of defendant's property and continues onto parcel 1, which lies to the west of parcel 2 and is not at issue in this case.
When they sold parcel 2 to defendants, plaintiffs reserved for themselves an easement. That easement provided:
"INCLUDING an exclusive easement for access and utilities to Parcel 3, Partition Plat No. 1995-70 over the following described area: Beginning at the NE corner of Parcel 2 of Partition Plat No. 1995-70 in Section 28, Township 13 South, Range 1 East of the Willamette Meridian in Linn County, Oregon and running thence South 0°01'10" West, 204.75 feet to a 5/8" iron rod; thence North 89°58'50" West, 40.0 feet; thence North 0°01'10" East, 223.59 feet to the Southerly line of County Road No. 908; thence South 64°45'52" East, 44.21 feet to the point of beginning."
A portion of the elevated driveway, the water spigot, and the western end of the culvert lie within the easement. The elevated driveway proceeds south toward the river from the county road to a "T," where it intersects another drivewayalso built by plaintiffs before their partition of the propertywhich leads east to plaintiffs' residence, and west to defendants' residence. The water spigot that plaintiffs use is located near that intersection, on the southern end of plaintiffs' driveway. The driveway slopes downward to the south from its intersection with the county road, and is elevated approximately thirty feet above the natural grade of the land at its north end where the pond is located. That downward slope continues to the "T;" the approach to plaintiffs' home slopes upward, and the approach to defendants' home slopes downward from the intersection.
After defendants purchased parcel 2 in 2005, they became concerned about plaintiffs' watering of vegetation within the easement. Defendants believed that the easement did not grant plaintiffs the right to water the easement area, and they were concerned that the water would run off onto their property. In the summer of 2006, defendants began turning off the water spigot and, after plaintiffs continued to turn it back onin one day the parties went back and forth in this manner seven timesdefendants twice spiked the spigot with an epoxy plug, eventually disabling it. Defendants also placed a note on the spigot telling plaintiffs that they considered the use of the spigot to be a trespass.
During this time, defendants also became concerned that their guests might become confused and travel onto plaintiffs' property by driving along the driveway on their property past the "T" intersection with plaintiffs' driveway. Defendants spoke with plaintiffs about this; they also received a letter from plaintiffs' attorney regarding their use of the driveway. In response, defendants placed plywood and cut firewood blocks across the driveway at the "T" intersection, forming a barrier between the two driveways. Some time later, plaintiffs removed the plywood and firewood and placed several large boulders along the same line across the "T" intersection. In so doing, plaintiffs broke the plywood and firewood into small pieces which they left in place. Later, defendant Bill Nyara spread those pieces about the easement area, because he felt "the Knights should look at what they had done." At trial, Bill Nyara testified that he was concerned that the boulders that plaintiffs placed would catch debris during high water events and could redirect water toward his house, potentially eroding the land on which it is situated. Plaintiffs adduced the testimony of an expert witness, Bliss, who opined that the boulders would have only a "negligible impact" on the property during a high water event.
*40 Most aggravating to defendants during this time was the presence of pond weeds, which had grown in plaintiffs' pond and had then been carried through the stand pipe, into the culvert, and out into the drainage way on defendants' property. During one day of heavy rainfall"a deluge," according to one defendantdefendants found the drainage way clogged with pond weeds and overflowing its banks. Defendants spent three hours out in the rain removing the weeds. Defendants placed weeds that they had removed from the drainage way in front of the plywood barrier that they had constructed at the "T" intersection, "to let [plaintiffs] see what I had to pull out of my ditch." Plaintiffs removed those weeds when they replaced the wooden barrier with boulders. Bill Nyara testified that that was the second time defendants had had to remove pond weeds from the drainage way, the first time having been the previous winter. He also testified that no weeds had entered the drainage way during the preceding winter because, he thought, "[plaintiffs] had removed all of the pond weeds this summer or fall."
Plaintiffs filed a declaratory judgment action in the trial court, seeking a declaration of their rights under the easement and an injunction prohibiting defendants from interfering with their watering of plants within the easement property. Plaintiffs contended that the term "exclusive" in the easement gave them the exclusive right to use the easement property. Defendants filed a counterclaim for declaratory judgment, seeking a declaration that the easement's terms did not allow plaintiffs to use the water spigot, to enter the easement property to turn the spigot on and off, or to maintain landscaping and vegetation within the easement area. Defendants also sought an injunction preventing plaintiffs from watering the easement or using the spigot. Defendants further alleged that drainage of water and weeds from the pond constituted a trespass because it interfered with their right to use and possess their property; accordingly, defendants sought to have plaintiffs enjoined from continuing to allow water and weeds to come onto their property.
On the parties' cross-motions for summary judgment, the trial court granted partial summary judgment in favor of plaintiffs. The court found and concluded that:
"1. The easement provides in pertinent part as follows: . . . `an exclusive easement for access and utilities to Parcel 3 . . .' The court finds that, as a matter of law, this language grants to plaintiffs the use of the easement, to the exclusion of defendants and all others.
"2. The court further finds that the language of the easement limits the permissible uses by plaintiffs to those reasonably related to access; those reasonably related to utilities benefitting Parcel 3; and those reasonably related to maintenance of the easement.
"* * * * *
"4. Because the pond existed at the time of the reservation of the easement (and in fact the easement is located on the dam which created the pond) defendants cannot now complain about the existence of the pond or the inevitable consequences thereof."
The court reserved three issues for trial: whether plaintiffs' planting of vegetation and watering of the easement were reasonably related to maintenance of the easement; whether defendants' property had been injured as a result of any drainage problems or plaintiffs' placement of the boulders, and whether plaintiffs' actions regarding the pond had resulted in any greater flow of water or pond weeds onto defendants' property than would have otherwise occurred, and, if so, whether that drainage was nonetheless necessary to plaintiffs' maintenance of the easement.
After a trial of those remaining issues to the court, the court entered a judgment for plaintiffs that provided, after reciting the terms of the easement set out above:
"3. Plaintiffs' easement gives the Plaintiffs exclusive right to the easement property described above. Plaintiffs' use is limited to use of the property for ingress and egress and for utilities to serve the property on Exhibit `A.' Plaintiffs may also water the easement, maintain vegetation on the easement and use the spigot located *41 on the easement. Plaintiffs may further erect a barrier that is reasonably necessary to maintain exclusivity of the easement. Two or three boulders of the size of those shown on Exhibit 110 and currently in place are sufficient for this purpose.
"4. Pursuant to the terms of the easement, Defendants may make no use of the easement property. Defendants may not store materials, trash or debris on the easement property. Defendants may not use the easement property for ingress and egress to their own property.
"5. Defendants' counterclaims for declaratory relief and trespass [are] dismissed with prejudice.
"6. The Court further orders that Defendants and their successors and assigns shall refrain from interfering with Plaintiffs' use of the easement as outlined herein and shall not gather onto, improve or utilize the easement in any way."
Defendants appeal, assigning error, as noted, to the court's interpretation of the easement, the determination that plaintiffs' placement of the boulders was reasonable, and the conclusion that the intrusion of pond weeds onto their property did not constitute a trespass. Importantly, defendants do not challenge the court's decisions regarding the reasonableness of plaintiffs' watering within the easement and using the water spigot; accordingly, we do not consider those aspects of the trial court's ruling. ORAP 5.45(1).
Plaintiffs reply that the trial court correctly concluded that the term "exclusive," as used in the easement, bars defendants from all uses of the easement property and that the placement of the boulders was a reasonable step to maintain the easement. Plaintiffs further assert that the trial court properly dismissed defendants' counterclaim for trespass because the intrusion of pond weeds through a natural drainage way cannot, as a matter of law, constitute a trespass.
We turn to the first assignment of error. As set out above, the express easement in this case provided, in part: "INCLUDING an exclusive easement for access and utilities to Parcel 3, Partition Plat No. 1995-70 over the following described area[.]" The following general principles apply to expressly created easement rights in Oregon:
"(1) the terms of the granting instrument, if unambiguous, define the location and the intended purpose of the easement; (2) the dominant estate holder's right to use the easement is limited to what is reasonably necessary to accomplish the intended purpose of the easement; and (3) the servient estate holder retains the right to use the burdened property in ways that do not unreasonably interfere with the dominant estate holder's reasonably necessary use of the property."
D'Abbracci v. Shaw-Bastian, 201 Or.App. 108, 121, 117 P.3d 1032 (2005). The trial court concluded that the term "exclusive" barred all use of the easement property by defendants. We disagree.
In construing an easement, we seek to discern the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner. Watson v. Banducci, 158 Or.App. 223, 230, 973 P.2d 395 (1999) (citing Bernards et ux. v. Link and Haynes, 199 Or. 579, 593, 248 P.2d 341 (1952), on reh'g 199 Or. 579, 263 P.2d 794 (1953)). To determine an easement's purpose, we first look to the words of the easement, viewing them in the context of the entire document; if the words clearly express the easement's purpose, our analysis ends. Watson, 158 Or.App. at 230, 973 P.2d 395 (citing Tipperman v. Tsiatsos, 327 Or. 539, 544-45, 964 P.2d 1015 (1998)). In giving effect to an easement's purpose, general principles of reasonableness control. Watson, 158 Or.App. at 231, 973 P.2d 395.
Applying those interpretive principles here, the word "exclusive" in the easement is modified by the terms that follow it; that is, the easement is exclusive "for access and utilities to Parcel 3." Thus, plaintiffs have the exclusive right to use the easement for access and utilities to parcel 3; that is to say, no one but plaintiffs may use the easement for access to parcel 3 or to bring utilities to that parcel, and the servient owners, defendants, retain the right to use the burdened property in ways that do not unreasonably interfere with plaintiffs' use of the easement for access and utilities to parcel 3. Accordingly, the trial *42 court erred in barring defendants from all use of the easement property because, as servient estate owners, defendants retain the right to use the burdened property provided that they do not interfere with plaintiffs' use. D'Abbracci, 201 Or.App. at 121, 117 P.3d 1032. The trial court appeared to recognize that principle in paragraph 3 of the judgment when it provided that "Plaintiffs' use is limited to use of the property for ingress and egress and for utilities to serve the property on Exhibit `A.'" However, the court went too far in barring defendants from all use of the easement area.
We turn to defendants' second assignment of error. The trial court determined that plaintiffs' placement of the boulders in the easement area was a reasonable step to maintain their exclusive use of the easement. Defendants assign error to that determination, arguing that there is no evidence in the record to establish the need for a barrier to prevent access to defendants' property via the easement, and that, if such a barrier were needed, the plywood and firewood barrier placed by defendants should have been sufficient. Plaintiffs reply that "the placement of the boulders is reasonable, necessary and convenient to preserve plaintiffs' enjoyment of their exclusive rights" and is also necessary to their maintenance of the easement.
Although we have concluded that the trial court erred in barring defendants from all use of the easement area under its interpretation of the word "exclusive," that conclusion does not undermine the trial court's rationale for determining that placement of the boulders by plaintiffs was a reasonable way of maintaining their exclusive use of the easement for access to their property. The boulder barrier here sits within the easement and is near the "T" junction of plaintiffs' driveway and the driveway that, without a barrier, would either lead from plaintiffs' driveway to plaintiffs' home, or to defendants' home. Plaintiffs' exclusive right to access parcel 3 via the driveways plaintiffs have constructed in the easement could be disturbed in the absence of the boulders. We have reviewed the record de novo and discern no reason to upset the trial court's ruling in this respect.
We turn to the third assignment of error and note, initially, that the parties differ as to what standard of review we should apply. Defendants ultimately sought only injunctive relief in their counterclaim for trespass, and they urge us to exercise de novo review of their third assignment of error. We agree that that is the proper standard. "The nature of the relief sought generally determines whether a claim is an action at law or a suit in equity." Association of Unit Owners v. Far West Federal Bank, 120 Or.App. 125, 134, 852 P.2d 218 (1993). Accordingly, we find anew the facts necessary to our determination of whether defendants were entitled to an injunction.
An injunction is an extraordinary remedy, to be granted only on clear and convincing proof of irreparable harm when there is no adequate legal remedy. Wilson v. Parent, 228 Or. 354, 369-70, 365 P.2d 72 (1961). It does not issue as a matter of right, but is within the discretion of the court. Jewett v. Deerhorn Enterprises, Inc., 281 Or. 469, 478, 575 P.2d 164 (1978). Moreover, the issuance of an injunction requires an "appreciable threat of continuing harm." Bates v. Motor Vehicles Div., 30 Or.App. 791, 794, 568 P.2d 686 (1977); see also McCombs et al. v. McClelland, 223 Or. 475, 485, 354 P.2d 311 (1960) (danger must be probable or threatened).
We conclude that, regardless of whether defendants' counterclaim adequately alleged a trespass, on the record before us defendants are not entitled to injunctive relief. In particular, defendant Bill Nyara's testimony at trial that plaintiffs had, in fact, removed all the weeds from the pond the previous winter, establishes that there is not an "appreciable threat of continuing harm" that would necessitate an injunction in this case. Moreover, the evidence showed that, even when such an intrusion occurred in previous years, the effort required to mitigate the intrusions was minimal, and defendants presented no evidence that they incurred any costs in carrying out that mitigation. Furthermore, given the *43 way in which defendants' property receives water by natural drainage from plaintiffs' property, as described above, there would be significant practical obstacles to enforcing the injunction sought by defendants. See Wilson v. Parent, 228 Or. at 369-70, 365 P.2d 72. ("`Equity has always regarded the problem of enforcing its judgment or decree as an important factor in determining whether injunctive relief is appropriate.'")(internal citation omitted). Accordingly, we decline to exercise our equitable discretion to issue an injunction in this case. The trial court correctly dismissed defendants' counterclaim for trespass.
Reversed and remanded for entry of a judgment granting to defendants, their successors, and assigns all uses of the easement property that do not substantially interfere with those uses granted to plaintiffs in paragraph 3 of the general judgment; otherwise affirmed.
NOTES
[*] Brewer, C.J., vice Ortega, P.J.
[1] ORS 19.415, which governs our standard of review in this case, was amended in 2009. Or. Laws 2009, ch. 231, §§ 2-3. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Because the notice of appeal in this case was filed before that date, the amendments do not apply.