Argued and submitted January 26, affirmed November 16, 2011

Betty A. FISCHER,
trustee of the Betty A. Fischer
Revocable Living Trust u/t/d 6/23/92
and trustee of the Gerald R. Fischer
Revocable Living Trust u/t/d 6/23/92,
*Plaintiff-Appellant,*

*v.*

Derek T. WALKER
and Cassondra A. Walker,
*Defendants-Respondents.*

Derek T. WALKER,
*Third-Party Plaintiff,*

*v.*

David E. SWEO
and Suzanne J. Sweo,
*Third-Party Defendants.*

Clackamas County Circuit Court
CV08120641; A144458

266 P3d 178

Mary W. Johnson argued the cause for appellant. With
her on the briefs was Mary W. Johnson, P.C.

Trung D. Tu argued the cause for respondents. On the brief were Jonathan M. Radmacher, Katie J. Johnson, and McEwen Gisvold LLP.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Riggs, Senior Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Plaintiff and defendant Derek Walker are owners of adjoining properties. Plaintiff brought an action against defendants—Derek Walker and his wife, Cassondra—for interference with an easement, alleging that defendants wrongfully impeded plaintiff's use of a dirt access road that runs through the Walker property. Defendants moved for summary judgment, and the trial court granted the motion, concluding that plaintiff did not have an express easement to use the dirt access road and that plaintiff had failed to plead a claim for an implied easement. Plaintiff appeals from the resulting judgment, and we affirm.

Because the court disposed of this case on defendants' motion for summary judgment, we view the record in the light most favorable to plaintiff to determine if there are genuine issues of material fact and if defendants are entitled to judgment as a matter of law. *See* ORCP 47 C. Plaintiff is the owner of Tax Lot 500, a 35.56-acre parcel located to the north of defendants' property. Defendant Derek Walker is the owner of Tax Lot 900, a 3.28-acre parcel that is bordered on the south and east by a county road. A related parcel, Tax Lot 600, is located immediately west of Tax Lot 500 and to the northwest of Tax Lot 900.

Tax Lots 500 and 900 were originally held in common by the Thayers. In April 1961, the Thayers executed and recorded an easement in favor of the owners of Tax Lot 600, the Lelands, which granted them the right to use a dirt access road—a "20-foot strip of land"—across the Thayers' property. The dirt access road began at the county road, ran roughly along the western boundary of Tax Lot 900, continued through the southwest corner of Tax Lot 500, and ended at Tax Lot 600. The following diagram is an approximate illustration of the relevant parcels and roads:

The instrument conveying the easement to the Lelands provided, in part:

"The Grantors, [the Thayers], * * * hereby grant unto [the Lelands], * * * their heirs, successors and assigns, an easement and right-of-way through, over and across the following described strip of land situated in Clackamas County, State of Oregon, to-wit: [providing technical description of easement].

"Said easement and right-of-way as hereinabove described shall be for the use and benefit of [Tax Lot 600] and shall be appurtenant thereto.

"The following terms and conditions are hereby established for said easement:

"* * * * *

"(d) The Grantors, their heirs, successors and assigns, reserve the right to use said road for the purpose of access to any of the Grantors' lands in [the area encompassing Tax Lots 500 and 900].

"(e) The title to said 20-foot strip shall remain in the Grantors subject only to the uses herein granted to the Grantees."

In June 1961, two months after the easement was created, the Thayers conveyed Tax Lot 500 to plaintiff's predecessor, the Fischers, by warranty deed.[1] The deed made no mention of the easement and stated that the property was "free from all encumbrances." At the time the Fischers purchased Tax Lot 500, the dirt access road was the only means of ingress and egress to the property. Although alternate access to Tax Lot 500 was established in 1972 via S. Cox Road, the easement road continued to be the only means of reaching the southern portion of the Fischers' parcel until 1994. The Fischers used the dirt access road continuously from 1961 until 2008, when defendants obstructed the roadway with a fence, vehicles, equipment, and a dirt pile.

The Thayers conveyed their remaining parcel, Tax Lot 900, by warranty deed to Edwin and Ida Sweo in 1965. That deed, like the Thayers' deed to the Fischers, purported to convey the property "free from all encumbrances." In 2007, after at least one intervening conveyance, Tax Lot 900 was conveyed to defendant Derek Walker by warranty deed. Again, the deed purported to convey the property "free of encumbrances," with certain exceptions not relevant here.[2]

Plaintiff brought this action seeking an injunction and "ancillary property damages" for interference with an easement. Plaintiff alleged that the Thayers' "words of reservation" in the 1961 easement had created a right to use the dirt access road for the benefit of Tax Lot 500 and that that right of use had then been conveyed to the Fischers as an appurtenance to the land. Defendants moved for summary judgment, arguing that plaintiff had no express easement based on the Thayers' reservation of rights and that plaintiff had not adequately pled a claim for an implied or prescriptive easement. The trial court agreed with defendants and entered judgment accordingly.

On appeal, plaintiff contends that the trial court erred in granting summary judgment to defendants. Plaintiff argues, first, that the Thayers' reservation of rights operated

---

[1] The property is now held in trust for the benefit of the Fischers. Plaintiff, Betty Fischer, is the trustee of the Fischer trusts.

[2] We note that there is no evidence in the record establishing the chain of title to Tax Lot 600.

to create "a new easement in the nature of a servitude," which was carved out of the interest granted to the Lelands. *See, e.g., Ploplys v. Bryson,* 188 Or App 49, 56, 69 P3d 1257 (2003) ("A reservation in a deed constitutes 'the creation in behalf of the grantor of a new right issuing out of the thing granted[.]' " (quoting *Oliver v. Johnson,* 166 Or 475, 480, 113 P2d 430 (1941))). In other words, plaintiff argues that the Thayers granted an easement to benefit Tax Lot 600, but then created a servitude burdening that easement for the benefit of their own land (Tax Lots 900 and 500). According to plaintiff, that servitude was then conveyed to the Fischers (and subsequently to plaintiff) as an appurtenance to Tax Lot 500. Alternatively, plaintiff argues that the Fischers acquired an easement by implication from prior use because the dirt access road was apparent and reasonably necessary to the use of Tax Lot 500 at the time it was severed from Tax Lot 900 and conveyed to the Fischers.

Defendants respond that the Thayers could not have granted themselves an easement in their own land, that is, they could not have created an easement in land to which they retained title because their fee simple interest in the land would necessarily extinguish any lesser interest, such as an easement. Instead, defendants contend, the Thayers' reservation of rights simply operated to make the Lelands' easement nonexclusive. Thus, in defendants' view, the Fischers never acquired any right to use the easement except for the right, as servient titleholders, to use that portion of the easement on their own land.

The parties' contentions require us to interpret the instrument creating the easement. "In construing an easement, our task is to discern the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner." *Bloomfield v. Weakland,* 224 Or App 433, 446-47, 199 P3d 318 (2008), *rev den,* 346 Or 115 (2009) (citation omitted). "To determine an easement's purpose, we first look to the words of the easement, viewing them in the context of the entire document; if the words clearly express the easement's purpose, our analysis ends." *Knight v. Nyara,* 240 Or App 586, 595, 248 P3d 36 (2011) (citation omitted). "If the wording at issue is uncertain or ambiguous, then the court

must determine the intent of the original parties by examining the relevant surrounding circumstances." *Tipperman v. Tsiatsos*, 327 Or 539, 545, 964 P2d 1015 (1998) (citations omitted). "The goal is always to give effect to the parties' intentions." *Bloomfield*, 224 Or App at 447.

Here, the 1961 easement granted the Lelands a right to use the dirt access road across the Thayers' property for the "benefit of [Tax Lot 600]." The easement was "appurtenant [to Tax Lot 600]" and no other property. That right, however, was subject to several described "terms and conditions." Among those terms and conditions were the following provisions:

"(d)   The Grantors, their heirs, successors and assigns, reserve the right to use said road for the purpose of access to any of the Grantors' lands in [the area encompassing Tax Lots 500 and 900].

"(e)   The title to said 20-foot strip shall remain in the Grantors subject only to the uses herein granted to the Grantees."

Plaintiff points to the language in paragraph (d) of the easement, which purports to "reserve the right" to use the access road, to argue that the Thayers created a new right issuing out of the easement for the benefit of their own land.[3] However, we think that, in the context of the entire document, there is not a clear intent to create a servitude burdening the Lelands' easement. Rather, the more reasonable construction is that the Thayers simply retained their ability, as titleholders of the servient estate, to use the land over which the easement ran. *See Knight*, 240 Or App at 595 ("In giving effect to an easement's purpose, general principles of reasonableness control." (Citation omitted.)). Specifically, paragraph (e) of the easement makes clear that the Thayers were not creating a new right out of the thing granted but, rather, were maintaining their preexisting right to use the burdened

---

[3] We assume for purposes of this opinion, and consistently with *Ploplys*, 188 Or App 49, that a grantor of an easement can retain title to the land burdened by the easement and, at the same time, reserve a servitude out of the easement for the benefit of that land. The parties here do not ask us to overrule or otherwise qualify that aspect of *Ploplys*.

land: "The *title* to said 20-foot strip *shall remain in the Grantors* subject only to the uses herein granted to the Grantees." (Emphasis added.)

Moreover, plaintiff's reliance on the word "reserve" in paragraph (d) is misplaced. Use of the term "reservation" in a deed does not necessarily have the technical effect of creating a new right out of the thing granted, as opposed to merely excepting from the grant a right that already existed in the grantor. "Theoretically, an 'exception' exists when some part of the ownership of the grantor is never parted with; while a 'reservation' is the term applicable when the instrument transfers all the grantor had but recreates in the grantor some specified interest with respect to land transferred." *Garza v. Grayson*, 255 Or 413, 415 n 3, 467 P2d 960 (1970) (citation and internal quotation marks omitted). Despite the technical distinction between an exception and a reservation,

> "[w]e do not attach any significance to the use of the terms 'exception' and 'reservation.' It is a matter of common knowledge that in practice these terms are used indiscriminately, and that frequently what is designated an exception is in substance a reservation, and vice versa. * * * Whether a provision operates to retain title in the grantor or merely to create a lesser interest in him must be determined from the language of the entire instrument, the situation of the property, and the circumstances indicating the purpose for which the land is conveyed."

*Hurd v. Byrnes*, 264 Or 591, 595-96, 506 P2d 686 (1973) (footnotes omitted). Thus, although the instrument here contains "words of reservation," in light of the context of the whole document, those words did not create a servitude in favor of the Thayers' land.

Plaintiff nonetheless argues that *Ploplys* requires a different result. In *Ploplys*, the plaintiffs' and the defendant's common predecessor created an easement in favor of third parties who owned adjacent land. 188 Or App at 51-52. In that easement, the grantor "reserve[d] the right" to use the road located upon the easement strip. *Id.* at 52. Importantly, the conveyance document also provided that the "easement is appurtenant to the real properties owned by each party * * *.

In the event of any subdivision or sale of any portion of such properties by any party, this easement shall remain appurtenant to all such resulting parcels." *Id.* (internal quotation marks omitted). In addition to classifying the reserved right as "appurtenant" to the grantor's property, the easement provided that the right could be "grant[ed]" to "third parties." *Id.* The grantor subsequently partitioned his land, and two of the resulting parcels were conveyed to the plaintiffs and the defendant. The deeds to those parcels specifically referenced the easement. A dispute arose after the defendant began using the easement road over the plaintiffs' property.

On appeal, we held that the parties' common predecessor had reserved a right to use the easement for the benefit of his own property. *Id.* at 54-55. Further, we explained, that right was later conveyed to the defendant as an appurtenance to his property. *Id.* at 55-56. In arriving at its conclusion, we found it persuasive that the document creating the easement contemplated the subsequent partitioning of the property and made the easement "appurtenant to the real properties owned by each party." *Id.* at 55. As we noted, a "servitude is said to be 'appurtenant' to the estate or interest in land that it benefits." *Id.* at 57. Thus, the instrument in *Ploplys* evinced an intent to convey a beneficial interest not only to the original grantees by way of the easement, but also to the grantor (the parties' common predecessor) by way of a reservation.

Here, by contrast, the instrument creating the 1961 easement contains language inconsistent with a reservation of a servitude in the grantor's land. The underlying title to the 20-foot strip is "subject *only* to the uses herein granted to the Grantees" and not to an included servitude. (Emphasis added.) The easement is "appurtenant" to only Tax Lot 600. The retained right is not identified as a separate conveyable interest in land.

In light of the above text and context, we conclude that the instrument conveying an easement to the Lelands did not also create a property interest benefitting the Thayers' land. Rather, that easement was simply nonexclusive and therefore permitted the servient estate owners (and their successors) to use the access road in ways that did not

interfere with the Lelands' easement. Accordingly, plaintiff has no express easement in the access road by virtue of the 1961 easement.

Plaintiff alternatively argues that, at the time of the Thayers' conveyance of Tax Lot 500 to the Fischers, an easement to use the dirt access road arose by implication. An easement may be implied "by inference when the circumstances that exist at the time of severance of a parcel establish that the grantor of the parcel intended to create an easement." *Bloomfield v. Weakland*, 193 Or App 784, 795, 92 P3d 749 (2004), *aff'd on other grounds*, 339 Or 504, 123 P3d 275 (2005). "If there was a previous apparent and permanent use of the land that is important for the enjoyment of the parcel that the common owner sold, the courts may imply that the purchaser received an easement, measured by the pre-existing use, over the parcel that the common owner retained." *Garrett v. Mueller*, 144 Or App 330, 341, 927 P2d 612 (1996), *rev den*, 324 Or 560 (1997). A number of factors are used to determine whether an easement has been created by implication, including "the claimant's need for the easement, the manner in which the land was used before its conveyance, and the extent to which the manner of prior use was or might have been known to the parties." *Penny v. Burch*, 149 Or App 15, 19, 941 P2d 1049 (1997); *see also Cheney v. Mueller*, 259 Or 108, 118-19, 485 P2d 1218 (1971) (listing factors).

We agree with defendants that plaintiff failed to plead facts necessary for relief on such a theory. Plaintiff's operative complaint alleges, in pertinent part:

> "Ever since before 1961, defendant's property has been traversed by a private roadway ('Roadway') that has provided the rear of plaintiff's property with access to [the county road]. The Roadway is described in that certain easement reserved as an appurtenance to plaintiff's property by instrument recorded on April 12, 1961 in Book 585, Page 448, Clackamas County Deed Records. Ever since plaintiff succeeded to the dominant estate of the easement in June 1961, she and her agents and invitees have used the Roadway for access between the rear of plaintiff's property and [the county road]."

The complaint does not allege facts showing that the easement was reasonably necessary to the Fischers' use of Tax Lot 500, that the use was apparent at the time the property was conveyed to the Fischers, or even that the purported dominant and servient estates (Tax Lots 500 and 900, respectively) were held in common ownership prior to the conveyance of Tax Lot 500 to the Fischers. The complaint alleges only that the easement roadway was used prior to the conveyance and that the Fischers have since used the roadway to access the rear of their property. Thus, although plaintiff introduced facts during the summary judgment proceeding regarding the existence of an implied easement, plaintiff failed to sufficiently plead those facts in her complaint. *See Weihl v. Asbestos Corporation, Ltd*, 204 Or App 255, 268-69, 129 P3d 748, *rev den*, 342 Or 254 (2006) (where trial court implicitly or explicitly rejects invitation to go beyond scope of pleadings at summary judgment stage, appellate court will not treat pleadings as implicitly amended to conform to the evidence).

Affirmed.