Argued and submitted May 4, 2011, on appeal, reversed and remanded in part, and affirmed in part; affirmed on cross-appeal June 13, 2012

EAGLES FIVE, LLC,
an Oregon corporation;
James D. Hollandsworth;
and Margaret A. Hollandsworth,
*Plaintiffs-Respondents*
*Cross-Appellants,*

*v.*

David LAWTON
and Laura Lawton,
husband and wife,
*Defendants-Appellants*
*Cross-Respondents.*

Union County Circuit Court
060943902; A142394

280 P3d 1017

Peggy Hennessy argued the cause for appellants-cross-respondents. With her on the briefs was Reeves, Kahn & Hennessy.

William J. Kuhn argued the cause and filed the briefs for respondents-cross-appellants.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

SERCOMBE, J.

---

**SERCOMBE, J.**

The dispute at issue in this case centers around a pipeline that runs from freshwater springs located on defendants' property across a portion of plaintiffs' land to a pump house on defendants' land. In 2006, before it could reach defendants' pump house, all the water in the pipeline was being diverted to plaintiffs' property through a valve installed on the pipeline by plaintiffs' predecessors-in-interest. For that reason, defendants placed a cap on the pipeline, shutting off the water altogether for a period of time. Plaintiffs filed an action and asserted that, pursuant to the terms of an express easement, they were entitled to take water from the pipeline and defendants had acted wrongfully. Defendants responded that the terms of the easement did not permit plaintiffs to obtain water through the valve on the pipeline. Both parties sought damages, declaratory relief, injunctive relief, and attorney fees. Following a bench trial, the trial court entered a judgment granting declaratory and injunctive relief to defendants and also giving plaintiffs limited injunctive relief. The court did not award monetary damages or attorney fees to either party. Defendants appeal, raising four assignments of error. Plaintiffs[1] cross-appeal and raise six assignments of error. On appeal, we reverse and remand in part, and affirm in part. On cross-appeal, we affirm.

A.  *Factual and Procedural Background*

We state the facts consistently with the trial court's express and implied findings, supplemented with uncontroverted information from the record.[2] Plaintiffs and defendants own contiguous properties, both of which were once part of a

---

[1] The plaintiffs in this case are James and Margaret Hollandsworth, a married couple, along with Eagles Five, LLC, a limited liability corporation owned by the Hollandsworths. Although the limited liability corporation is the legal owner of plaintiffs' recreational vehicle park property, for ease of reference, we simply refer to plaintiffs collectively throughout this opinion.

[2] Although the parties assert that, as to the issues relating to equitable claims, our standard of review is *de novo*, the notices of appeal in this matter were filed after the effective date of the 2009 amendments to ORS 19.415. Or Laws 2009, ch 231, §§ 2, 3. Those amendments, which apply to cases in which the notice of appeal is filed after June 4, 2009, make *de novo* review discretionary in equity cases. Although "[u]pon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, [this court], acting in its sole discretion, may try the cause anew upon the record," ORS

larger parcel known as Hot Lake Resort. Plaintiffs own the northwesterly portion of the original parcel, while defendants' property is located to the south and east of plaintiffs' land.

In 1968, while the entire parcel was still under single ownership, water rights for the land were approved. Springs 1 and 2, to which those water rights relate, are located on defendants' property. Water from those springs runs into a collection box at the base of the springs, which, in turn, feeds springwater into a six-inch pipeline that runs toward the east from the springs on defendants' property over a section of plaintiffs' property (the recreational vehicle (RV) park property) and ends up at a pump house on defendants' property. The pipeline has been in that location since at least 1973 (when plaintiffs' and defendants' properties were still part of the larger Hot Lake Resort parcels) and has been used to transport water to the pump house since that time.

In 1988, the RV park property was separated from the rest of the original parcel and conveyed. At that time, a series of easements, including a freshwater easement (the 1988 easement) were executed in favor of the purchaser of the RV park property.[3] The 1988 easement grants

> "an easement and use for a fresh water pipe running from the pump station in Lot 6 generally westerly to the RV building in lot 4; said line will run along the meander of the Old Immigrant Road, also known as the Meander Line of Tule Lake; as built."

---

19.415(3)(b), we will exercise our discretion to do so "only in exceptional cases," ORAP 5.40(8)(c). Here, neither party has requested that we review *de novo* and, because this is not an exceptional case where *de novo* review would be appropriate, we decline to exercise our discretion to conduct such a review. Accordingly, we review the trial court's legal conclusions for errors of law and are bound by the trial court's factual findings if they are supported by any evidence in the record. *Neff v. Sandtrax, Inc.*, 243 Or App 485, 487, 259 P3d 985, *rev den*, 350 Or 716 (2011); *State v. B. B.*, 240 Or App 75, 77, 245 P3d 697 (2010).

[3] A number of freshwater easement agreements, each signed by a different grantor, were executed and recorded in June 1988. However, all of those documents contain the same description of the freshwater easement granted to Hot Lake Recreational Vehicle Resort, Inc., the purchaser of the RV park property at that time. Accordingly, herein, we simply refer to the 1988 easement rather than separately discussing the various 1988 easement agreements.

Later, in 1995, in light of foreclosure litigation relating to the RV park property that had the potential to extinguish the 1988 easement, an agreement reaffirming the 1988 easement was executed. In the 1995 agreement, each of the parties "reaffirms the Easements * * * and consent to the continued existence of the Easements * * * for the use and benefit of the R.V. Park and the successors and assigns of the current owner of that property." Pursuant to the 1995 agreement, "the Easements * * * shall run with the land." The 1995 agreement further provides that "[s]hould any legal proceeding, including arbitration, be necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to recover its reasonable costs and attorneys' fees incurred including any costs and attorneys' fees incurred on appeal."

Defendants purchased their property in 2002. Plaintiffs purchased the RV park property in late 2004. As noted, since at least 1973, water from springs 1 and 2 flowed easterly through the pipeline to the pump house on defendants' property. In 2004, plaintiffs' predecessor in interest installed a valve into the pipeline at a point where the pipeline crosses the RV park property. The valve served to divert springwater to the RV park property before the water reached defendants' pump house. Eventually, all of the collected springwater was diverted through the valve in the pipeline before it reached defendants' pump house. Accordingly, in 2006, defendants capped the pipeline at the collection box and, thereby, prevented all flow of water into the pipeline. Defendants left the cap on the pipeline for between 11 and 13 days.

In response, plaintiffs commenced this action. In their amended complaint, plaintiffs sought, among other things, damages for breach of the 1988 easement, as preserved in the 1995 agreement, along with attorney fees pursuant to the attorney fee provision of the 1995 agreement, damages for interference with water rights, and an injunction preventing defendants from interfering with the flow of water from springs 1 and 2 through the pipeline. Plaintiffs asserted that, "[p]ursuant to the terms and conditions of easements and agreements for freshwater lines granted by the parties' predecessors in interest, [they have] an easement for running water lines to [the RV park] property from

Springs 1 and 2."[4] It was their position that, by capping the pipeline at the collection box, defendants had interfered with their easement and water rights.

Defendants asserted a number of counterclaims. In their first counterclaim, they sought attorney fees pursuant to ORS 20.105, asserting plaintiffs' claims were frivolous. They also sought declaratory relief pursuant to ORS 28.020. Specifically, as pertinent here, defendants asked the court to declare that (1) plaintiffs "have no right to place a valve on the 1973 pipe at any location between the spring collection box for Springs 1 and 2 and defendants' property," (2) plaintiffs may obtain their irrigation water "by a waterline from defendants' property pursuant to the recorded easements," and (3) defendants "have an implied easement for delivery of water through the 1973 pipe over those portions of plaintiffs property that the pipe crosses." Defendants also sought damages from plaintiffs, an injunction to prevent plaintiffs from further interfering with delivery of water through the 1973 pipeline, and attorney fees pursuant to the terms of the 1995 agreement. In their fourth counterclaim, defendants also requested a declaration regarding several of the easement documents executed in 1988. Specifically, defendant asked for a declaration that an easement executed on June 3, 1988, did not encumber their property, the only easement that "could have affected" their property was a document dated June 28, 1988, and plaintiffs could only "obtain water for delivery to their property pursuant to the terms of the June 28, 1988 and 1995 agreements."

B. *Trial Court's Ruling*

After a bench trial, the court concluded that, contrary to plaintiffs' assertions, the 1988 easement and the

---

[4] In the alternative, plaintiffs sought an implied easement. They asked the court for a "judgment decreeing that plaintiffs own an easement appurtenant * * * for the right to use, operate, and maintain a collection box and the existing water line over and in defendants' property from the collection box to the current point of entry on plaintiffs' property." As part of that implied easement claim, plaintiffs asked the court to enjoin defendants from "restricting or in any way interfering with the flow of water from Springs 1 and 2 through water lines located across property owned by defendants." They also sought damages for wrongful use of civil proceedings. The trial court denied all of those claims, and they are not at issue on appeal.

1995 agreement are not ambiguous and do not grant any express or implied "easement that would apply to Defendants' springs 1 and 2. The language in the 1988 and 1995 agreements are straightforward—the easement only runs from the pump house westerly to the RV Park." Thus, in order to use water from springs 1 and 2, plaintiffs would have to make arrangements for the physical transport of water from the pump house to the RV park property. Because plaintiffs had not made such arrangements, the court concluded that defendants had not interfered with plaintiffs' easement or water rights by capping the pipeline. With respect to plaintiffs' request for injunctive relief, however, the court concluded that, although plaintiffs "do not own an easement onto Defendants' property to reach springs 1 and 2," they were entitled to injunctive relief "that will legally prevent Defendants from shutting down springs 1 or 2 or from damaging or dismantling such springs or from doing any act that would disrupt the flow of water from springs 1 and 2 to Lot 6 or Defendants' property at or near the pump house." However, an injunction

> "will only exist if and when Plaintiffs are able to expressly use their easement from Defendants' property at Lot 6 at the pump house and are able to actually transfer the water westerly to the RV Park. This will require Plaintiffs to either construct a pipeline west to the RV property from Lot 6 (pump house) or otherwise be legally able to transport such water onto the RV property."

Thus, the judgment granted injunctive relief as follows:

> "At such time as plaintiffs install the necessary piping to allow water to flow from the pump house on defendants' property to plaintiffs' property or are otherwise legally able to transport such water to the plaintiffs' property, defendants shall not interfere with the flow of said water to plaintiffs' property and are specifically enjoined from such interference."

The court dismissed all of plaintiffs' other claims with prejudice.

With respect to defendants' counterclaims, the court held that plaintiffs' claims were not without an objectively

reasonable basis and, accordingly, were not frivolous pursuant to ORS 20.105. As to defendants' request for declaratory relief, in light of its interpretation of the 1988 easement and the 1995 agreement, the court declared that plaintiffs

> "have no right to place a valve on the 1973 pipe between the spring collection box for spring 1 and 2 and the pump house located on defendants' property. Plaintiffs neither have nor have ever had the legal right to cap the 1973 pipeline across the plaintiffs' RV property. The existing valve on the 1973 pipeline on the RV property must be removed on or before May 22, 2009. Plaintiffs shall be further enjoined from interfering with the flow of water in such pipe to Defendants' property, except as may apply to Plaintiffs' easement located on lot 6 at or near the pump house."

With respect to defendants' request for an implied easement for the 1973 pipeline, the court concluded that it was "clear that Defendants make use of water at the pump house" and that such "use has been made since the '1973 pipeline' from springs 1 and 2 was constructed." The pipeline "clearly benefits Defendants' property near the pump house" and was "created and used by Defendants and their predecessors well before either the 1988 or 1995 agreements." According to the court, "[p]laintiffs were clearly on notice when they purchased the RV property (anytime after 1973) that there was a pipeline on the property carrying water from springs 1 and 2 to Defendants' property at the pump house." In the court's view, "[w]hen the 1988 and 1995 agreements were drafted, * * * there was an implied intent that Defendants would have a continued right to transport water across Plaintiffs' RV property to the pump house[.]" Accordingly, the court declared that defendants "have an implied easement across plaintiffs' property for use and delivery of water through the 1973 6" pipe from springs 1 & 2." Finally, the court declared that plaintiffs'

> "right to use water from springs 1 and 2 only exists as a right to exercise Plaintiffs' easement in lot 6 at or near the pump house. Plaintiffs' express easement grants them an easement only from the pump house area of Defendants' lot 6 westerly to the Plaintiffs' RV Park."

The court denied defendants' fourth counterclaim for declaratory relief and dismissed their remaining claims. Although

the judgment designates defendants as "the prevailing party in these proceedings," the court did not award any attorney fees.

## C. *Issues on Appeal*

As noted, defendants raise four assignments of error, and plaintiffs raise six assignments of error on cross-appeal. On appeal, in their first two assignments of error, defendants contend that, in light of the attorney fee provision of the 1995 agreement, the trial court erred in failing to award them attorney fees. They also assert, in their third assignment of error, that "the trial court erred in granting Plaintiffs a contingent, future injunction because it goes beyond the scope of Plaintiffs' requested relief and the injunction does not relate to an actual * * * controversy between the parties." Finally, in a fourth assignment of error, defendants contend that the trial court erred in denying the request for declaratory relief in their fourth counterclaim (in which they sought a declaration that a recorded easement dated June 3, 1988, did not encumber their property and that an easement dated June 28, 1988, was the only easement that could encumber their property).

On cross-appeal, plaintiffs assert in assignments of error one through four that the trial court erred in its interpretation of the 1988 easement and the 1995 agreement in a number of ways. In their fifth and sixth assignments of error, plaintiffs assert that the trial court erred in granting defendants an implied easement because it did not apply the clear and convincing evidence standard in doing so, and because it did not take into consideration the factors that are important in determining whether a party has established an implied easement.

We reject defendants' fourth assignment of error without discussion. In addition, we note that the trial court properly interpreted the unambiguous language of the 1988 easement. Accordingly, we reject plaintiffs' assignments of error one though four without additional discussion. With respect to the parties' remaining contentions on appeal, we begin by addressing defendants' assertion that the injunctive relief granted to plaintiffs was improper. We then turn to plaintiffs' contentions regarding the implied easement and,

finally, to the issue of attorney fees pursuant to the 1995 agreement.

D. *Grant of Injunctive Relief Against Defendants*

Defendants assert that the trial court "erred in granting an injunction that Plaintiffs had not requested regarding future rights and obligations that were not in dispute." (Emphasis and boldface omitted.) Specifically, although the court found that defendants had not interfered with plaintiffs' existing easement or water rights, it nonetheless enjoined defendants from interfering with the flow of water to plaintiffs' property when and if plaintiffs "install the necessary piping to allow water to flow from the pump house on defendants' property to plaintiffs' property or are otherwise legally able to transport such water to the plaintiffs' property." According to defendants, there was no basis for the trial court to grant "this unrequested, future, contingent injunction based upon circumstances that were not before the trial court." That is so because "[t]here is no immediate or irreparable harm related to future easement rights that are not in dispute." Plaintiffs respond only that the trial court erred in its interpretation of the 1988 easement and 1995 agreement—an assertion that we have rejected. They do not otherwise specifically address defendants' contentions regarding the injunction.

"An injunction is an extraordinary remedy, to be granted only on clear and convincing proof of irreparable harm when there is no adequate legal remedy." *Knight v. Nyara*, 240 Or App 586, 597, 248 P3d 36 (2011) (citing *Wilson v. Parent*, 228 Or 354, 369-70, 365 P2d 72 (1961)). "Moreover, there must be an appreciable threat of continuing harm." *LeVasseur v. Armon*, 240 Or App 250, 259, 246 P3d 1171 (2010); *see Knight*, 240 Or App at 597. In other words, to qualify for injunctive relief, it must be shown that the conduct to be enjoined is "probable or threatened." *McCombs et al v. McClelland*, 223 Or 475, 485, 354 P2d 311 (1960). An injunction may not be granted "merely to allay the fears and apprehensions of an individual." *Id.*

In light of those standards, the trial court erred in granting plaintiffs the injunctive relief at issue. As the trial

court found, at the time of trial, defendants had not interfered with plaintiffs' right to obtain fresh water. Pursuant to the 1988 easement and 1995 agreement, plaintiffs had a right to install a "fresh water pipe running from the pump station in Lot 6 generally westerly to" the RV park property. However, as the trial court correctly concluded, plaintiffs did not have the right to take water directly from springs 1 and 2 or to divert it out of the 1973 pipeline before it reached the pump house. Because plaintiffs had not made arrangements to lawfully obtain water from the pump house, defendants did not interfere with plaintiffs' easement or water rights when they capped the 1973 pipeline in 2006. Again, the trial court granted plaintiffs an injunction to prevent defendants from interfering with the flow of water to the RV park property when and if plaintiffs make arrangements to lawfully transport the water. However, given that defendants had never interfered with plaintiffs' rights, the facts do not support a conclusion that the conduct enjoined was "probable or threatened." In other words, the facts found by the trial court and the evidence in the record do not support a finding that there existed, at the time of trial, an appreciable threat of irreparable harm to plaintiffs if the injunction were not granted. Accordingly, the trial court erred in granting plaintiffs injunctive relief.

E. *Implied Easement*

It is plaintiffs' position that an implied easement for the 1973 pipeline should not have been granted to defendants because there is not clear and convincing evidence of factors identified by the Oregon Supreme Court as "important" in determining whether an easement should be implied.[5] We

---

[5] As noted, plaintiffs specifically assert that the trial court erred because, in plaintiffs' view, the court did not apply the " 'clear and convincing' evidence standard when granting Defendants an implied easement for a water line across Plaintiffs' property" and did not apply "the *Cheney v. Mueller*, 259 Or 108, 485 P2d 1281 (1971) factors in granting Defendants an implied easement across Plaintiffs' property." We construe those assignments of error to assert that the trial court erred in ruling that defendants have an easement by implication across plaintiffs' property. *See Marc Nelson Oil Products, Inc. v. Grim Logging Co.*, 199 Or App 73, 75 n 1, 110 P3d 120, *adh'd to as modified on recons*, 200 Or App 239, 115 P3d 935 (2005) ("Assignments of error * * * are to be directed against rulings by the trial court, not against components of the trial court's reasoning or analysis that underlie that ruling.").

disagree. We conclude that the trial court could properly find by clear and convincing evidence that, at the time the RV park property and the 1988 easement were conveyed, the parties intended that defendants' predecessors-in-interest would continue to transport water through the 1973 pipeline across plaintiffs' property to defendants' pump house. Accordingly, the trial court did not err in determining that defendants have an implied easement to continue that use.

"[A]n easement may be created by implication in favor of either the grantor or grantee" of property. *Cheney v. Mueller*, 259 Or 108, 118, 485 P2d 1218 (1971). Such an easement arises as an inference of the intention of the parties to a conveyance of land based on the circumstances existing at the time of the conveyance, *see Fischer v. Walker*, 246 Or App 589, 598, 266 P3d 178 (2011), and must be established by clear and convincing evidence, *Thompson v. Schuh*, 286 Or 201, 203, 593 P2d 1138 (1979). "Although there are many factors to consider, the essential question is whether a reasonable purchaser would [expect] the easement under the circumstances in which he or she purchased the land." *Garrett v. Mueller*, 144 Or App 330, 341, 927 P2d 612 (1996). Among the factors used to evaluate whether an easement by implication has been created are "the claimant's need for the easement, the manner in which the land was used before its conveyance, and the extent to which the manner of prior use was or might have been known to the parties." *Penny v. Burch*, 149 Or App 15, 19, 941 P2d 1049 (1997); *see Fischer*, 246 Or App at 598; *see also Cheney*, 259 Or at 118-19 (listing factors considered important in determining whether the circumstances surrounding a conveyance of land imply an easement). The factors to be considered "are variables rather than absolutes and [n]one can be given a fixed value." *Id.* at 119 (internal quotation marks omitted).[6]

Here, with respect to the central issue in an implied easement claim—the intent of the parties—the trial court found that in 1988 (as well as 1995) "there was an implied

---

[6] To the extent that plaintiffs assert that the trial court was required to explicitly address each of the factors discussed in *Cheney*, we observe that there is no legal obligation on the court to make explicit findings or otherwise set forth and discuss each factor.

intent that Defendants would have a continued right to transport water across Plaintiffs' RV property to the pump house[.]" As part of its determination that the parties intended an easement for the 1973 pipeline, the court found that the evidence was "clear" that defendants and their predecessors had been using the 1973 pipeline to transport water from springs 1 and 2 to defendants' pump house since "well before" 1988. *See id.* ("manner in which the land was used prior to its conveyance" is one factor that may be important in implying an easement). Furthermore, it found that plaintiffs (and any purchaser of the RV property after 1973) were "clearly on notice" of the 1973 pipeline on the property. *See id.* (another important factor is "the extent to which the manner of prior use was or might have been known to the parties"). Both of those findings are supported by the record.

In addition, there is evidence from which the court could find that an implied easement for the 1973 pipeline would result in reciprocal benefits to both parties. *See id.* (listing as a factor that may be considered in implying an easement "whether reciprocal benefits result to the conveyor and the conveyee"). That is, the express terms of the 1988 easement allow plaintiffs (and their predecessors) to obtain water from springs 1 and 2 by running a water line from defendants' pump house to the RV park property. The water in question reaches the pump house (and thus is made available to the location where plaintiffs' easement begins) by way of the 1973 pipeline. Thus, based on the terms of the 1988 easement, the court could conclude, by clear and convincing evidence, that an easement by implication would provide a reciprocal benefit.

In sum, we conclude that the trial court could properly find, by clear and convincing evidence, that the parties to the conveyance intended an easement for the continued use of the 1973 pipeline. Accordingly, we reject plaintiffs' fifth and sixth assignments of error.

F. *Attorney Fees*

Finally, we turn to defendants' contention that the trial court erred in failing to award them reasonable attorney fees. Neither party disputes that the attorney fee clause of

the 1995 agreement applies to the interpretation of the provisions of the 1988 easement. Indeed, before the trial court, both parties sought fees pursuant to that provision. However, defendants assert that, although the court concluded that they had not interfered with plaintiffs' water rights or plaintiffs' rights pursuant to the 1988 easement, and both determinations involved "an interpretation of the parties' rights and obligations under the terms of the 1988 Easement, as preserved by the 1995 Agreement," it declined to award fees pursuant to the terms of the 1995 agreement.

Plaintiffs respond in two ways. First, they contend that defendants "would not be the prevailing parties" had the trial court not erred in its interpretation of the terms of the 1988 easement, as preserved by the 1995 agreement, and in determining that defendants have an implied easement for the 1973 pipeline. As discussed above, we have already rejected the premises underlying that contention. In our view, the trial court was correct both in its conclusions regarding the unambiguous terms of the easement and in its declaration regarding defendants' implied easement. Second, plaintiffs argue that, given the complexity of issues presented and that both parties prevailed in some ways, the court "was correct in not awarding prevailing party attorney fees" and "[d]esignation of a prevailing party was not appropriate in this case." We agree with defendants that the trial court erred when it declined to award attorney fees pursuant to the attorney fee clause in the 1995 agreement.

We turn first to the terms of the 1995 agreement with respect to attorney fees. The attorney fee clause provides:

> "Should any legal proceeding, including arbitration, be necessary to enforce or interpret the terms of this Agreement, *the prevailing party shall be entitled to recover its reasonable costs and attorneys' fees* incurred including any costs and attorneys' fees incurred on appeal."

(Emphasis added.) Thus, the agreement provides for mandatory attorney fees to the prevailing party; it "does not vest any discretion in the trial court not to award attorney fees."

*Beggs v. Hart*, 221 Or App 528, 536, 191 P3d 747 (2008) (discussing a substantially similar attorney fee clause that provided: "If any suit or action [is] filed by any party to enforce this agreement or otherwise with respect to the subject matter of this agreement, *the prevailing party shall be entitled to recover reasonable attorney fees* incurred in preparation or in prosecution or defense of any such suit or action as fixed by the trial court, and if any appeal is taken from the decision of the trial court, reasonable attorneys fees as fixed by the appellate court." (Brackets in original; emphasis added.)). Accordingly, the trial court was required to identify the prevailing party for purposes of attorney fees, and to award reasonable fees for claims relating to the 1988 easement as preserved by the 1995 agreement. To the extent that the trial court believed it had discretion not to award any fees, in light of the mandatory nature of the attorney fee provision, the court erred.

Furthermore, contrary to plaintiffs' assertion, "it does not necessarily follow that, merely because a party does not obtain all the relief sought, a party is not a prevailing party[.]" *Id.*; *see* ORS 20.077(1) ("In any action or suit in which one or more claims are asserted for which an award of attorney fees is either authorized or required, the prevailing party on each claim shall be determined as provided in this section.").[7] Rather, with respect to each claim that falls

---

[7] ORS 20.077 provides, in part:

"(1) In any action or suit in which one or more claims are asserted for which an award of attorney fees is either authorized or required, the prevailing party on each claim shall be determined as provided in this section. The provisions of this section apply to all proceedings in the action or suit, including arbitration, trial and appeal.

"(2) For the purposes of making an award of attorney fees on a claim, the prevailing party is the party who receives a favorable judgment or arbitration award on the claim. If more than one claim is made in an action or suit for which an award of attorney fees is either authorized or required, the court or arbitrator shall:

"(a) Identify each party that prevails on a claim for which attorney fees could be awarded;

"(b) Decide whether to award attorney fees on claims for which the court or arbitrator is authorized to award attorney fees, and the amount of the award;

"(c) Decide the amount of the award of attorney fees on claims for which the court or arbitrator is required to award attorney fees; and

within the terms of the attorney fee provision and for which, therefore, fees are mandatory to the prevailing party, the trial court must determine, on a claim-by-claim basis, which party received a "favorable judgment" and is, therefore, the "prevailing party." ORS 20.077(2); *see Beggs*, 221 Or App at 537. The court must then determine and award reasonable attorney fees to the party who prevailed on such claims.

On appeal, reversed and remanded in part, and affirmed in part. Affirmed on cross-appeal.

---

"(d) Enter a judgment that complies with the requirements of ORS 18.038 and 18.042."