[Argued October 11, 1892; decided November 14, 1892.]

## JAMES STEEL, ADMR. *v.* CITY OF PORTLAND.

[S. C. 31 Pac. Rep. 479.]

DEDICATION OF PARK OR PLAT.—Where the owner of a tract of land lays it out in lots and streets, and in the plan or map thereof filed in the public records designates a certain portion as "Park," and afterwards conveys lots and blocks by reference to such plan, it operates as a dedication of the land for a public park. The sale and conveyance of lots according to such plat implies a covenant that the streets and other public places designated shall never be appropriated by the owner or his successor in interest to any use inconsistent with that represented on the original map. *Carter* v. *City of Portland,* 4 Or. 339; *Meier* v. *Cable Ry. Co.* 16 Or. 500 ( 19 Pac. Rep. 610; S. C. 1 L. R. A. 856 ); *Hogue* v. *City of Albina,* 20 Or. 182 ( 25 Pac. Rep. 386 ), approved and followed.

Multnomah County: LOYAL B. STEARNS, Judge.

Plaintiff appeals.    Affirmed.

The plaintiff, as administrator, with the will annexed, of the estate of Ben Holladay, deceased, brings this suit against the city of Portland, George W. Weidler, Linda Holladay, Ben Campbell Holladay, minor heirs of the said Ben Holladay, and C. B. Bellinger, their guardian, for the purpose of obtaining a decree declaring the fee simple title to blocks numbered 132, 133, 140, and 141, known as the Holladay Park, in said city, to be held in trust by defendant Weidler for the benefit of the estate of said Ben Holladay, deceased, compelling said Weidler to deed said real property to the plaintiff, as such administrator, in order that the same may be utilized for the purposes of administration, and adjudging that said realty was never dedicated to said city as a park or otherwise, and restraining said city from asserting any claim of interest, right, or title therein or thereto.

This property was originally purchased by Ben Holladay from Jacob Wheeler and wife, and the title thereto taken in the name of George W. Weidler, as trustee. Mr. Weidler, after the deed had been made to him, laid out Holladay's addition to East Portland, and filed and recorded two plats thereof, the first on the seventeenth

day of .December, 1870, and the second on the first day
of February, 1871.   Said first plat was recorded in
book M, page 302, of the record of deeds of Multnomah
County, and said second plat was recorded in book M,
page 634, of the records of deeds of said county.   On
both said plats the land in controversy is represented in
a square form by continuous lines running around it and
the word "Park" written in the blank space, and no
streets extend through it.   The case was referred to
Raleigh Stott, Esq., who found that the action of Weidler
as trustee was with Holladay's knowledge and consent,
and that Holladay intended the land to be used as a public
park.   His report was confirmed by the circuit court and
plaintiff appeals.

*Albert H. Tanner,* for Appellant.

There is nothing to show that George W. Weidler, the
trustee of Ben Holladay, had any authority in writing or
otherwise to dedicate this land to the public.   Mr. Weidler
testifies that he did all that he did in the matter by the
direction of Ben Holladay.   Still he does not say that
Ben Holladay ordered him to have the plat show this
land as a park, or that he gave him any directions in
reference thereto.   "No one," says Washburn on Ease-
ments, page 226, "but the owner of land, or some one
duly authorized by him, can dedicate it by act or other-
wise.   And if done by a stranger, who afterwards acquires
a title to the land, he is not estopped to deny the dedica-
tion."   See also Angell on Highways, 137; *Lee* v. *Lake,* 14
Mich. 12; *Kyle* v. *Town of Logan,* 87 Ill. 64; *Williams* v.
*Cincinnati,* 1 Ohio St. 478; *Gosselin* v. *Chicago,* 103 Ill. 623;
Perry on Trusts, §§ 520, 521.

It is true that Weidler held the naked legal title to the
property, but before Ben Holladay or his estate can be
bound by Weidler's acts concerning this land the defend-
ant must show by competent evidence that his acts were
authorized, or that the grantee was a *bona fide* purchaser

XXIII. OR.—12.

for value and without notice of Ben Holladay's equitable ownership: Perry on Trusts, § 334.

It is not good as a statutory dedication, for the further reason that our statute requires that the donation or grant must be marked or noted as such on the plat and duly acknowledged: Hill's Code, § 4780.

There must be words on the plat accompanying it, indicating a dedication, or what is equivalent thereto: *Gardiner* v. *Tesdale*, 2 Wis. 153; *Emmons* v. *Milwaukee*, 32 Wis. 434–443; *David* v. *City of New Orleans*, 16 La. Ann. 404.

The testimony shows that Ben Holladay was the real owner and proprietor of this land; that he caused it to be conveyed to Weidler as a matter of convenience in making deeds, as Holladay's wife was then in Europe. The nature of the trust was to hold the land conveyed, but subject to Ben Holladay's orders and directions. It was clearly not within the scope of such a trust for the trustee to dedicate any part of the trust property to the public for a park. He was a mere agent without authority to deal with the land he held in trust, and we submit that his authority to make a statutory dedication must have been in writing under the seventh subdivision of section 785, Hill's Code, requiring the authority of an agent to make an agreement for his principal concerning real property to be in writing: *Rock Island & Co. R. R.* v. *Shurick*, 65 Ill. 223; *Allerson* v. *Ashby*, 106 Ill. 50; Perry on Trusts, § 778.

The writing accompanying the first plat does not help it out in the least, for that simply says the plat is a correct diagram, map or plat showing the blocks and lots therein and giving the dimensions of the streets, without acknowledging it as being correct in any other particular and without referring to the park at all. The writing accompanying the second plat is even more defective in this particular, acknowledging simply that the map is a correct diagram or plat showing the *blocks and lots* without any reference even to the streets. There is nothing in the writing accompanying either plat to indicate that the

park blocks were granted or donated to the public, or
intended so to be.   Merely marking "Park" on the plat
would not be such a marking or noting that they were
donated or granted the public for a public park as is
required by the statute:   *Perrin* v. *Railroad Co.* 36 N. Y.
120;  *City of Pella* v. *Scholte,* 23 Iowa, 283;  *McWilliams* v.
*Morgan,* 61 Ill. 89; *Dexter* v. *Tree,* 117 Ill. 532; *Emmons et al.*
v. *Milwaukee,* 32 Wis. 424;  *Logansport* v. *Dann,* 8 Ind. 378;
*Leandias* v. *Municipality,* 16 La. 509;  and see generally
*David* v. *City of New Orleans,* 16 La. Ann. 404;  *Niagara
Bridge Co.* v. *Buchanan,* 66 N. Y. 261; *People* v. *Reed,* 81 Cal.
70;  *Hogue* v. *Albina,* 20 Or. 182.   We therefore submit
with entire confidence that the city has failed to make
out a statutory dedication.

Was there a common-law dedication?   To constitute
such a dedication the proof must be clear and unquivocal
that the owner intended to dedicate.   There is no act
shown to have been done by Ben Holladay that would in-
dicate any intention on his part to dedicate the land to the
public.   The only act of any kind that could be construed
as indicating such intention is the placing of the word
"Park" on the plat, done apparently without his knowl-
edge or authority.   That, as we have already shown, is
not sufficient, because he may have intended to designate
it, and no doubt did intend it for a private park or resi-
dence, and not for a public park.   What other acts are
shown in the evidence either by Ben Holladay or George
W. Weidler to show any intention on the part of Ben
Holladay to dedicate this land to the public?   The court
will search in vain.   There are none.   Now, if we admit
that the city has shown enough to raise a presumption
of a dedication, which we deny, is it not conclusively
rebutted by the testimony for plaintiff showing the acts
and declarations of Ben Holladay negativing the idea of
a dedication?   "Any act or course of action adopted by
the owner with the evident purpose of rebutting the in-
tent to dedicate will be, when established, conclusive to
that end":   5 Am. & Eng. Ency. Law, 409; *Kelly* v. *Chi-*

*cago*, 48 Ill. 388; Elliott Streets, 130, 131, 132; Ang. High. 163–165; Wash. Easem. 186; *Irwin* v. *Dixon*, 9 How. (U. S.) 10.

The conduct of the city in assessing this property as private property, and its entire failure for thirteen or fourteen years to use the ground for the purpose of a park or any purpose, shows that the city did not consider that there had been a dedication of it to the public:   Elliott Streets, 131; *Princeton* v. *Templeton*, 71 Ill. 68.

*Wm. T. Muir*, city attorney, for Respondent.

The sum and substance of the whole matter is this: When Ben Holladay made up his mind to leave the city of Washington in 1883 and return to this state, his wife protested.   She did not want to live "in the Stark-street house."   Joe Holladay claimed everything as his own. In order to meet the objections of his complaining spouse, he spoke grandly of a mansion to be erected in the park. The complaint is based upon the enticing prospect held out by Ben Holladay for the purpose of humoring his regretful and impatient wife.   A nursery fiction is made the foundation of a useless suit, and the Holladay nursery is despoiled to pay the bills — a suit unjust to both plaintiff (so far as the real parties in interest are concerned) and defendant.   Upon reaching Portland, finding himself involved in extensive litigation, and realizing that all the property rightly his own was involved, Holladay, as Mr. Thompson says, in moments of cupidity, thought he might be able to recover the park because the city had not appreciated his gift as it should; had not improved the park according to his notion, and because he conceived the idea that there was some irregularity in the dedication.   This is all disproved, and the dedication is firmly established.   The court may almost take judicial notice of the fact that the park is now in one of the most populous districts of Portland, and that thousands have bought property and built their homes upon the faith of the map of dedication.

Our position is this: When Holladay's trustee executed the map of Holladay's Addition in question, showing thereupon a number of streets and avenues, lots, and blocks in regular order, and the space called "Park," the latter was *per se* dedicated.  When the owner of land in an incorporated city makes a map subdividing the same into lots, blocks, and streets, and also represents thereon a certain space designated as a "Park," and sells lots and blocks with reference to said plat, he thereby irrevocably dedicates said streets and space marked "Park" to the public:  *Price* v. *Inhabitants of Plainfield,* 40 N. J. L. 608, 612; *Price* v. *Thompson,* 48 Mo. 361, 363; *Trustee* v. *Hoboken,* 33 N. J. L. 14, 15, 17; *Perrin* v. *N. Y. C. R. R.* 36 N. Y. 120; *Archer* v. *City of Salinas,* 93 Cal. 43, 50, 51; *Carter* v. *City of Portland,* 4 Or. 339; 17 Am. & Eng. Ency. Law, 407.

Formal acceptance by the corporate authorities is not necessary, and where the dedication is irrevocable it need not be followed by immediate and continued use:  *Carter* v. *City of Portland,* 4 Or. 340; *Meier* v. *Portland Cable Ry. Co.* 16 Or. 500; *Hicklin* v. *McClear,* 18 Or. 126, 141.

Adverse possession to give title by force of the statute of limitations must be exclusive:  III. Washb. Real Prop. 160; *Tracy* v. *Norwich R. R. Co.* 39 Conn. 382.

BEAN, J.—This is a suit to quiet title to a block of land in Holladay's Addition to East Portland, now in the consolidated city of Portland.  A decree was rendered by the court below for the defendant upon the ground that the land in question had been dedicated to the public for use as a public park, and from this decree the plaintiff has appealed.

The facts as we gather them from the evidence are, that the land in question is a portion of a tract of 241.94 acres, purchased by Ben Holladay in his lifetime of Jacob Wheeler and wife, and by him conveyed to George W. Weidler as trustee on the sixth day of August, 1870. Weidler had no beneficial interest in the land or any part

thereof, but held the same only as trustee for Holladay, subject to his orders, and to enable him to convey the same without his wife joining in the deed, she being then absent in Europe. Sometime prior to the seventeenth day of December, 1870, Holladay caused the entire tract of land to be surveyed, platted, and laid out in lots, blocks, and streets, under the name and style of Holladay's Addition to the city of Portland, and caused to be made and executed by Weidler, on December 17, 1870, a plat of said addition, which was duly recorded in the records of Multnomah County on the same day. Afterwards, and on the first day of February, 1871, Weidler, at Holladay's request, and being joined therein by John H. Mitchell and Samuel M. Smith, made, executed, and acknowledged a second plat or map of said addition, intended to be in lieu of and to take the place of the former plat, which last-mentioned plat is for the purposes of this case identically the same as the former one, and was duly recorded on the first day of February, 1871. Upon each of these plats the land in controversy is reprerented as a solid block of land, equal in size to four ordinary blocks with intervening streets, and is bounded by Eleventh, Thirteenth, and Multnomah Streets and Holladay Avenue, and is itself marked "Park." Soon after the making and recording of these plats or maps, Holladay caused the land thereon marked "Park" to be enclosed with a substantial fence, and continued to maintain and keep the same in repair until in the year 1883 or 1884, when the city of East Portland, its officers and agents, took possession of said property, and it and its successor in interest, the city of Portland, has continuously since that time cared for and improved the same as a public park. After the making and recording of the plats referred to, Holladay sold, and caused Weidler to convey, divers and sundry lots and blocks with reference to said plat, and among which were all the lots and blocks fronting and abutting on the streets bounding said park.

The contention of plaintiff is, that the making and

filing of the plat of Holladay's Addition, with the land in question marked and designated thereon as "Park," followed by conveyance of lots by reference thereto, did not constitute a dedication of the land to the use of the public as a public park; and if there was any dedication the right to use it as a public park became barred by the statute of limitation before Holladay died. At the argument it was claimed by plaintiff's counsel that neither of the maps or plats was acknowledged in the manner provided by statute, but we regard that question as wholly immaterial in this case, because it has repeatedly been held by this court, and the law is well settled, that where the owner of land lays out and establishes a town and makes and exhibits a map or plan thereof, with lots, blocks, and streets marked thereon, and sells and conveys lots by reference to such plan or map, he thereby dedicates to the public the streets and public places thereon; and if upon such plan he has designated a space or block as a public park, such space or block is as fully dedicated to public use as are the streets delineated thereon. The sale and conveyance of lots according to such plan or map implies a covenant that the streets and other public places designated shall never be appropriated by the owner to a use inconsistent with that represented by the map upon the faith of which the lots are sold: *Carter* v. *City of Portland*, 4 Or. 339; *Meier* v. *Portland Cable Ry. Co.* 16 Or. 500 (1 L. R. A. 856; 19 Pac. Rep. 610); *Hogue* v. *City of Albina*, 20 Or. 182 (25 Pac. Rep. 386; 10 L. R. A. 673). There is no difference in the principles applicable to the dedication of public streets and public squares or parks; in each case the dedication is to be considered with reference to the use to which the property may be applied or the purpose for which the dedication is made, and this may be ascertained by the designation which the owner gives to land upon the map or plat, whether he calls it a street, square, or park. It is of no consequence whether the map or plan in this case was properly executed or not if the land in question is sufficiently des-

ignated thereon as a public park, as we think it is, for the sale and conveyance by Holladay's direction of lots and blocks by reference to such plan operated as an irrevocable dedication of the land to the public for use as a park.

In England the word park is ordinarily applied to an enclosure upon a man's own land, and signifies that the land enclosed is the private ground of the proprietor: 2 Bla. Com. 38. And so too in this country, a man may enclose and ornament his land and call it a park without giving to the public any right to use it as a public place, because there is no semblance of dedication. In such case the meaning of the word is determined by the cir-cumstances surrounding its use; but when it is applied to a piece or block of land in a city or town, and so marked and designated on the map or plan, the circum-stances are such as to settle its meaning as a place for the resort of the public for recreation or enjoyment. The word "Park," written upon a block of land repre-sented upon a map or plan of a city or town, is as signifi-cant of a dedication, and the use to which the land is intended to be applied, as the word "street," written on such plan. The popular and natural meaning of the term when so used is a piece of ground set apart for the enjoyment, comfort, and recreation of the inhabitants of the city or town in which it is located, and this is so whether the word be used alone or with some qualifying word, as "Hyde Park," "Regent Park," or "Central Park": 17 Am. &. Eng. Enc. Law, 407; *Price* v. *Inhabitants of Plainfield*, 40 N. J. Law, 608; *Trustees of M. E. Church* v. *Hoboken*, 33 N. J. Law, 13 (97 Am. Dec. 696); *Archer* v. *Salinas City*, 93 Cal. 43 (28 Pac. Rep. 839). We are therefore all agreed that when Holladay caused the land in controversy to be marked and designated on the plan or map of Holladay's Addition as "Park," and then sold and caused to be conveyed lots and blocks by reference to such plan, it operated as a dedication of the land for a

public park, and his successor in interest cannot now set up, as against the public, a different intent.

The other question presented requires but a brief notice. Assuming that the statute of limitations will run as against the public in a case of this character, which we neither affirm nor deny, a careful examination of the entire evidence in this case has satisfied us that Holladay never at any time held adverse possession of the land in question for the purpose or with the intent of claiming the fee, but that he enclosed it for the purpose of protecting the trees and shrubbery growing thereon so that it might become, when the surrounding property should be occupied and improved, what he intended and designed it to be,—a public park.

The decree of the court below is therefore affirmed.

NOTE.— The authorities on the question of whether the statute of limitations will run in such a case are collected and classified in the decisions of *Fort Smith* v. *McLibben*, 48 Am. Rep. 19, and *Orr* v. *O'Brien*, 14 Am. St. Rep. 287.— REPORTER.