Argued April 4, decided April 25, rehearing denied May 16, 1911.

## KUCK v. WAKEFIELD.

[115 Pac. 428.]

DEEDS—CONSTRUCTION—INDUCEMENT TO CONTRACT—ABUTTING STREETS.

1. A deed to a lot described by reference to a map prepared by the grantor implies a representation to the purchaser as an inducement to purchase that a street shown by the map and furnishing the only outlet has been dedicated, though the map is not recorded and the street line is not indicated thereon.

DEDICATION—NATURE—PAROL—STREETS.

2. A street can be dedicated by parol.

DEDICATION—ESSENTIALS—INTENT TO DEDICATE.

3. The public or individuals can rely on a landowner's conduct as indicating intent to dedicate a strip as a street, regardless of his actual intent.

DEDICATION—EVIDENCE—CHARACTER.

4. Intent to dedicate can be established by any class of satisfactory evidence, including presumptive evidence.

DEDICATION—PRESUMPTIONS—REBUTTAL.

5. Presumption of dedication arising from a landowner's conduct is rebuttable, except where its overthrow would operate as a fraud upon innocent parties.

From Wasco:  WILLIAM L. BRADSHAW, Judge.

This is a suit by H. L. Kuck against F. H. Wakefield. From a decree in favor of plaintiff, defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Huntington & Wilson* with an oral argument by *Mr. Bela S. Huntington.*

For respondent there was a brief and an oral argument by *Mr. William H. Wilson.*

Opinion by MR. CHIEF JUSTICE EAKIN.

Prior to 1860 W. D. Bigelow settled upon, and afterward acquired title to, a donation land claim under the provisions of an act of Congress of date September 7, 1850, upon which a portion of Dalles City is located, including lot 7 of block 8 of what is known as "Bigelow's

addition," and the tract in controversy herein, adjacent to lot 7 on the east. W. C. Laughlin at the same time occupied the donation land claim contiguous to that of Bigelow on the east, a portion of which, adjacent to the line between these two donation claims, he platted into lots, blocks and streets as "Laughlin addition." His plat was filed in the county clerk's office of Wasco County on November 29, 1862. The evidence shows that Bigelow also platted an addition to the city, but, if his plat was ever filed with the county clerk, it cannot now be found, nor any copy thereof. However, the fact that he made a plat at about the same time that Laughlin did is fully established by the evidence. Mrs. Lord, a daughter of W. C. Laughlin, testifies that she has known the streets and blocks of Bigelow's addition ever since it was platted, which was, as she says, "some time in the '50's."

It appears that the town is not laid out parallel with the line between the two claims, the blocks being laid diagonally across that line, and that Laughlin and Bigelow exchanged fractional lots on the line so that these two additions would fit together. On November 3, 1862, Bigelow conveyed to M. M. Chipmann "lots No. seven (7) and eight (8) in block eight (8), 'the whole in Bigelow's addition to The Dalles, and in accordance with his map of the same,' " and also the fraction of two other lots, the other portion of which is a part of the Laughlin addition. This deed is a solemn statement by him that the tract was platted into lots, blocks, and streets, and the latter description indicates that the two plats correspond as to lots and blocks at the line between them. It also appears that Bigelow conveyed various other lots in his addition, describing the property with reference to the addition as in the Chipmann deed.

A general map of the town was prepared in 1881 or 1882 by Judges L. L. McArthur and J. H. Bird, for the city, which has been recognized as an official map of the

city since that time, and it embraces the Bigelow addition. From what source they secured their data for that portion of the map is not disclosed, but there can be no doubt that Bigelow made a map of the addition which he called "Bigelow's addition to The Dalles," the blocks, lots, and streets of which correspond and connect with Laughlin's addition and plat. Block 8 of Bigelow's addition lies across the west line of the Laughlin donation claim, and is a continuation of the Laughlin addition. It is bounded on the south by Fourth Street, on the north by Fifth Street, and on the east, as far south as the Laughlin line, by Laughlin Street. The McArthur and Bird plat does not contain any marks or indications of the east line of Laughlin Street on the east of lot 7, block 8, south to Fifth Street. If it had included such a line, this controversy might have been averted, as the absence of such a marking is relied upon by defendant as indicating that it was not intended that it should be dedicated as a street.

1. But there is nothing to indicate that the McArthur and Bird map is identical with the Bigelow map; and, in view of the fact that Bigelow conveyed lot 7 by reference to his map and that it would be without any outlet and would be valueless as a building lot without the street, the purchaser had a right to construe his deed as containing a representation on the part of Bigelow that a street had been dedicated, adjacent thereto, as constituting an indispensable inducement to the purchaser. It further appears that during all these years the ground now claimed to be a street has remained uninclosed and unoccupied. By the McArthur and Bird map block B lies immediately south of block 8, Bigelow's addition, with Fifth Street running east and west between them, and immediately west of block B is block C, with space between them for a street which would be approximately a continuation south of Laughlin Street. Whether these two blocks were a part of the original Bigelow's addition does not appear, but

they are within the Bigelow donation land claim. By the Laughlin map, Laughlin Street extends south to the line between the two donation claims and within a few feet of lot 7, and these circumstances indicate that Bigelow intended to and did extend Laughlin Street south through his addition.

2. Every principle of equity and justice requires a recognition of the extension of Laughlin Street, adjacent to lot 7, and we are justified in the conclusion that Bigelow so intended. The dedication of a street by parol is well recognized in this State. It is announced in *Carter v. Portland,* 4 Or. 339, by Mr. Justice MCARTHUR, where he says that "if one owning land, or having an equitable interest therein, and subsequently acquires the title thereto, lays out thereon a town, and makes and exhibits a plan thereof with spare ground marked streets, alleys, public squares, or parks, and sells lots with clear reference to that plan or map, the purchasers of the lots acquire as appurtenant thereto every easement, privilege, and advantage which the plan or map represents as part of the town. * * It is not necessary to show that the map upon which such streets, alleys, public parks, etc., were displayed, was recorded, but simply that it was used and referred to by the proprietor in selling the lots." The same principle is announced and followed in *Oregon City v. Oregon & Cal. R. Co.,* 44 Or. 165, 175 (74 Pac. 924, 926), in which Mr. Justice BEAN says:

"It is well settled that, where the owner of land exhibits a map or plat of a town thereon, showing lots, blocks, streets, and other public ways, and sells and makes deeds of conveyances by reference thereto, he thereby dedicates to the public the streets and public places shown thereon."

The final decision in that case upholds the dedication uninfluenced by the fact that the map was recorded as it was not the map of the owners, the Harveys. They made no express dedication. They only conveyed with refer-

ence to a map made by another, and the recording or execution thereof did not bind them. They adopted the map by using it. The dedication was not by resaon of the record, but by reason of the conveyance made by reference to the map. Whether or not there was a line on the Bigelow map indicating the east line of Laughlin Street adjacent to lot 7 we deem immaterial, as was held in the case of *Warden* v. *Blakely*, 32 Wis. 690, which is directly in point. In that case plaintiffs claimed title from the heirs of the original proprietor of the addition to a strip of ground adjacent to and along the south side of block 20 of that addition, while defendant, the owner of lots 5 and 6 in block 20, claimed it was Alice Street, and it was objected by plaintiffs that, if such had been the intention of the proprietor, he would have designated Alice Street by a line south of block 20. Counsel for defendant, in the above case, in his brief argues that "because the southern half of lot 20 is subdivided into lots running north and south, and which are inaccessible unless there is such a street, no sane man would thus subdivide the lot and leave no street south of them; and the plat must have a reasonable construction." The court say:

"The argument of the counsel for the respondent in support of this construction of the plat is unanswerable. * * The circumstance that there is no line there defining the boundary of the street can have no such controlling effect as the counsel for the plaintiffs is disposed to give it."

As already suggested, Bigelow's map was not filed or recorded, and we are without any data as to his map except as we gather from his own acts in relation thereto, and the lines of the blocks and streets as recognized by him and the city ever since and as shown by the McArthur and Bird map. Defendant's contention, if sustained, might as well apply to any other street or alley not

actually improved by the city. The failure of Bigelow to comply with the law in recording his map was not the fault of plaintiff, and cannot now operate to work such a hardship upon him as to depreciate the value of his property in the face of the circumstances here disclosed. The conclusion is irresistible that it was the intention of Bigelow to dedicate this street on the east side of lot 7, namely, a continuation of Laughlin Street, and we must conclude that his map so represented. A court of equity will not be so technical as to deprive plaintiff of a valuable property right because in Bigelow's map there may not have been a mark indicating the east line of Laughlin Street. Nor is there any evidence before us that the map from which he made the sale did not in some manner indicate the street.

The fact that the extension of Laughlin Street south would locate it upon an abrupt rocky bluff is without force. Common observation teaches us that rocky bluffs, however abrupt, are not insurmountable to the opening of streets in cities as soon as the occasion arises for their use.

The deed from the Methodist Missionary Society to Kelly, of date April 22, 1885, can have no bearing upon this case. It appears that on December 18, 1862, Kelly had acquired an interest in the Bigelow donation claim, and the conflict between the claims of the missionary society and Bigelow was litigated in the United States Supreme Court, in which Kelly was a party defendant, and the decree upheld Bigelow's donation land claim. The conveyance by the missionary society to Kelly is a quit-claim, really a trust to enable him "to execute and deliver confirmatory deeds to any and all persons who have heretofore received deeds for a lot or lots" from Bigelow, Kelly, Waite, or Humason, successors in interest in the donation land claim, and this deed to Kelly was evidently in recognition of the decree of the United States Supreme

Court in the case mentioned: *Missionary Society* v. *Dalles,* 107 U. S. 336 (2 Sup. Ct. 672: 27 L. Ed. 545). But such deed was unnecessary as the decree adjudged that the Missionary Society acquired no title or interest in the Bigelow donation land claim.

We find no error in the ruling of the lower court, and the decree is affirmed.                                    AFFIRMED.

<hr>

Decided May 16, 1911.

ON PETITION FOR REHEARING.

[115 Pac. 430.]

3. In the petition for a rehearing the principal contention is that the court has disregarded the rule that the dedication is not to be presumed, but must be established by such acts or declarations as shown beyond a conjecture a present intention on the part of the owner to part with his title. Although the authorities state the rule to be that the intent of the owner to dedicate must be clearly shown, yet the intent which the law means is that expressed in the visible conduct or open acts of the owner. The public or individuals have a right to rely on the owner's conduct, as indicating his intent, such as would reasonably lead one to infer a dedication rather than a secret intent. Neither is it true that such intent in every case must exist in the mind of the owner. If his open and known acts are of such a character as to induce the belief that the owner intended to dedicate, and the public or individuals acted upon such conduct, and acquired rights which would be lost if the owner were allowed to reclaim the land, it will amount to a dedication. Elliott, Roads and Streets (3 ed.) §§ 138, 139, and 140. The text in Section 138 is quoted with approval in *Pittsburg, etc., R. W. Co.* v. *Town of Crown Point,* 150 Ind. 550 (50 N. E. 741) ; *Schettler* v. *Lynch,* 23 Utah 305 (64 Pac. 955), and *Raymond* v. *Wichita,* 70 Kan. 523 (79 Pac.

323.) At Section 145 the same author says that, from rules he has previously stated, "our conclusion must be that if the landowner's conduct is such as to indicate to men of ordinary prudence that there was an intent to dedicate, the question of evil purpose or fraudulent design ought not to enter into the investigation."

4. The character of the intention to dedicate and the evidence of it are different things. The proof of the intent does not depend .on the class of the evidence. No particular class of evidence is required. It is enough if the intention be proved by evidence that is of a satisfactory character. It may be proved by express contract or language of the owner, or be gathered from conduct of the owner in connection with the surrounding circumstances. Elliott, Roads and Streets, § 173. It is said at Section 175 of Elliott that there is no reason why the ordinary rules of presumptive evidence should not apply to cases of dedication, as well as other cases where the title to real property is in controversy; and it follows that the person against whom the dedication is asserted should be held to intend the reasonable and necessary consequences of his acts.

5. Therefore a court is justified in presuming that the owner intended what his acts indicate. This presumption is a rebuttable one, except in cases in which its overthrow would operate as a fraud upon innocent parties, who have acted on the faith of the conduct. *Faust* v. *Huntington,* 91 Ind. 493, 495.

To hold that Bigelow did not intend to dedicate the street would be to attribute to him bad faith in the sale of the lot; such intent being indicated by the conditions and the surrounding circumstances at the time of the sale, including the price named in the deed conveying lots 7 and 8, in block 8, and fractions of two other lots, which was $1,500, the ground being open and unoccupied and to all appearances a continuation of Laughlin Street. On

the contrary, we must attribute to him a purpose to deal fairly with the purchaser.

Considering the circumstances of this case we think the court is fully justified in the conclusions reached in the opinion, that Bigelow's map of his addition represented Laughlin Street on the east of lot 7.

It is also claimed in the petition that defendant is a purchaser without notice of defects in his title. But the same circumstances that established the dedication are sufficient to put him upon notice, and it is augmented by the fact that the city for many years has maintained a sidewalk on the west side of the street, which has been used as a public passway by pedestrians. But that question has not been raised in this case. The only issue tendered by the pleading is as to the dedication.

The petition is denied.

AFFIRMED:   REHEARING DENIED.