Argued and submitted April 19, reversed and remanded July 27, 2016

Stephen G. DAYTON;
and Carolyn Laverne Dayton,
*Plaintiffs,*

*v.*

Randy JORDAN;
and Sun Buggy Fun Rentals, Inc.,
*Defendants.*

Randy JORDAN;
and Sun Buggy Fun Rentals, Inc.,
*Counterclaim Plaintiffs-Respondents,*

*v.*

Stephen G. DAYTON;
and Carolyn Laverne Dayton,
*Counterclaim Defendants-Appellants.*

Coos County Circuit Court
14CV1087; A158858

381 P3d 1031

Roger Gould argued the cause and filed the brief for appellants.

William A. McDaniel argued the cause and filed the brief for respondents.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

## DEHOOG, J.

In this quiet title action, Stephen Dayton and Carolyn Dayton (plaintiffs) appeal a limited judgment granting one of Randy Jordan and Sun Buggy Fun Rentals, Inc.'s (defendants) counterclaims and declaring that defendants have an implied easement over a road that runs through plaintiffs' property and forms the northern border of defendants' property. In summary judgment proceedings, defendants argued that they had acquired the easement through a deed that referenced a partition plat depicting defendants' property, plaintiffs' property, and the disputed road. In defendants' view, when plaintiffs' predecessor sold defendants' property by reference to the partition plat, that depiction of the road resulted in an implied easement over the road and appurtenant to defendants' property. The trial court accepted that theory and granted summary judgment for defendants on that counterclaim. Because the court apparently misconstrued applicable case law regarding implied easements, we conclude that the court erred in granting summary judgment on that basis. Accordingly, we reverse and remand.

## I.  BACKGROUND

The relevant historical facts are not disputed. Plaintiffs and defendants operate competing all-terrain vehicle (ATV) rental businesses on adjoining parcels near the Oregon Dunes National Recreation Area. Plaintiffs' parcel is immediately north of defendants' parcel; the southern boundary of plaintiffs' parcel is the northern boundary of defendants' parcel. A road—the point of conflict in this appeal—runs east to west through plaintiffs' parcel along that boundary. That disputed road connects with Highway 101 to the east and the dunes to the west; it provides the only direct access from either parcel to the dunes.

Previously, both parcels—and the disputed road—were part of a larger, undivided parcel owned by Pacific Coast Recreation RV, Inc. (Pacific Coast). The original Pacific Coast parcel included additional property located to the north, south, and west of the parcels at issue in this appeal. When the Pacific Coast parcel was still intact, another entity, Coos Bay Lumber, owned property to the west of the Pacific Coast parcel, which separated that parcel from the dunes. Thus, to

gain access to the dunes, Pacific Coast obtained an easement over the Coos Bay Lumber property in 1990. That easement over the Coos Bay Lumber property abutted the disputed road, such that the road, together with the 1990 easement, gave occupants of the Pacific Coast parcel direct access to the dunes. The 1990 easement expressly stated that it was conveyed to Pacific Coast for "egress from and ingress to the Pacific Coast Property by pedestrians, recreational vehicles and light-duty passenger automobiles, trucks, vans and tour vehicles."

Pacific Coast subsequently partitioned its property a number of times. Two partitions are of particular significance to this appeal. The first and most significant partition, which Pacific Coast made in 1999, created tax lot (TL) 606, the parcel that now belongs to defendants. At that time, the parcel that is now plaintiffs' parcel remained a part of Pacific Coast's larger, undivided property. The 1999 partition plat depicted the disputed road on the Pacific Coast property to the immediate north of TL 606, but it did not state that the new parcel had an easement over the disputed road.

Then, in 2005, Pacific Coast made a second significant partition and created TL 600, which is now plaintiffs' parcel, as well as two other parcels located north of the disputed road. The 2005 partition plat depicts the disputed road running entirely on, and forming the southern boundary of, TL 600. That plat expressly purported to grant all future owners of the three parcels that it created—including plaintiffs' parcel—an easement over the disputed road "for ingress and egress to the sand dunes." No parcel created through either partition, however, has a formal, deeded easement over the disputed road.

The 1999 partition that created TL 606 is central to defendants' arguments in this appeal. In 2004, Pacific Coast conveyed TL 606 to defendants' predecessor, Endicott, through a deed of sale that described the property being conveyed to Endicott by reference to the plat from that 1999 partition—the partition that created defendants' parcel. At the time that Pacific Coast sold TL 606 to Endicott in 2004, plaintiffs' parcel had not yet been created, and Pacific Coast

still owned both the disputed road and the property to the north of TL 606. Defendants later acquired TL 606 from Endicott.

This litigation arose out of the parties' competing interests in using the disputed road for their respective ATV rental businesses. Plaintiffs filed a complaint seeking to quiet title as to any adverse claims by defendants and to enjoin defendants from using the disputed road. Defendants' answer raised two counterclaims, each seeking a declaration recognizing an easement for their benefit over the road. Defendants' first counterclaim, the subject of this appeal, alleged that the easement over the disputed road was "implied from reference to" the 1999 plat. Their second counterclaim, the subject of the appeal in *Dayton v. Jordan*, 280 Or App 236, 381 P3d 1041 (2016), alleged that the easement over the disputed road was "implied from prior use."

Defendants moved for summary judgment regarding the first counterclaim. They argued that the depiction of plaintiffs' parcel and the disputed road on the 1999 plat—together with the reference to that plat in the 2004 deed to Endicott—had created an implied easement appurtenant to defendants' property. As part of that argument, defendants highlighted the relationship between the 1990 easement over the Coos Bay Lumber property and the various partitions of the Pacific Coast property described above. Defendants asserted that the 1990 easement was appurtenant to each parcel created by those partitions, and noted that the disputed road was the only way to access that easement from those parcels. Thus, defendants reasoned, the circumstances surrounding the 1999 plat suggested that the disputed "road was placed on the plat for a reason"— to indicate that the road benefitted the parcel that the plat created—namely, TL 606.

In response to defendants' motion, plaintiffs argued that the mere fact that the 1999 plat depicted the disputed road was insufficient to establish an implied easement, even though the deed to Endicott referenced that plat. Rather, plaintiffs argued, the court was required to apply the eight-factor test set forth in *Cheney v. Mueller*, 259 Or 108, 118-19, 485 P2d 1218 (1971), to determine

whether defendants had an implied easement over the road. Collectively, those so-called *"Cheney* factors" consider the circumstances surrounding the alleged creation of an implied easement to ascertain the intent of the putative grantor. *See id.* Because, plaintiffs argued, defendants had not produced sufficient evidence for the court to evaluate those factors, that intent remained a disputed factual issue that precluded summary judgment in favor of defendants.

Defendants replied that it was well established that a plat reference alone is sufficient to create an easement. In support of that theory, defendants cited a line of Supreme Court cases, including *Carter v. City of Portland,* 4 Or 339 (1873), *Kuck v. Wakefield,* 58 Or 549, 115 P 428, *reh'g den,* 58 Or 555, 115 P 430 (1911), and *Menstell et al. v. Johnson et al.,* 125 Or 150, 262 P 853 (1927), *reh'g den,* 125 Or 169, 266 P 891 (1928), as well as our own, more recent decision in *Bloomfield v. Weakland,* 224 Or App 433, 199 P3d 318 (2008), *rev den,* 346 Or 115 (2009) (*Bloomfield III*). According to defendants, those cases support the proposition that, "[w]hen a landowner plats property and conveys lots by reference to the plat, the purchaser of the lot acquires by implication an easement in all streets, parks, or other open areas shown on the plat." Thus, defendants argued, because the deed to Endicott referenced the 1999 plat showing the disputed road, TL 606 had acquired, by implication, an easement over that road.

The trial court accepted defendants' theory. The court concluded that plaintiffs had not raised any issue of material fact as to that theory and that, on the record before the court, defendants were entitled to prevail as a matter of law. In reaching that conclusion, the court, like defendants, noted the 1990 easement over the Coos Bay Lumber property, and reasoned that the disputed road "was an extension of that easement road benefitting defendants' parcel." The court wrote:

"In the present case, the facts are quite limited, but both parties agree there is no dispute as to those limited facts. Defendants' lessors acquired the property by reference to the 1999 plat, the 1999 plat includes on the north boundary a visual depiction of a private road, which is the road in question, and that private road proceeds from US

Highway 101 westerly and connects to a road continuing westerly[,] which is a road that accesses the sand dunes area to the west. That road to the west of the subject property is the subject [of] an easement created in 1990 and which benefits defendants' parcel "*** for egress from and ingress to [the property including defendants' parcel] of [sic] recreational vehicles, and pedestrians incidental to its recreational vehicle park, equipment rental businesses and dune tours ***.' This court has no question that the road in question shown on the plat map was an extension of that easement road benefitting defendants' parcel and for their use as shown on the plat map and there is no factual question on that issue."

(First and second modifications added; other modifications and omissions in original.)

Although it considered the 1990 Coos Bay Lumber easement in reaching that conclusion, the trial court expressly rejected plaintiffs' argument that it was required to apply the various *Cheney* factors to ascertain whether Pacific Coast had intended to create an easement benefiting defendants' parcel. That argument, in the court's view, was "based on a different legal theory" than the theory advanced by defendants' first counterclaim. The court, therefore, granted defendants' summary judgment motion and entered a limited judgment in defendants' favor on their first counterclaim. Plaintiffs appeal that limited judgment and assign error to the court's summary judgment ruling.

On appeal, the parties reassert the respective positions that they argued to the trial court. Plaintiffs steadfastly maintain that defendants cannot prevail, as a matter of law, under the theory that they advanced below, and that factual issues precluded summary judgment under the implied easement theory that the court, in plaintiffs' view, was required to apply. Defendants, on the other hand, stand by the theory that the trial court appears to have adopted— namely, that by referencing the 1999 partition plat in its 2004 deed of sale to Endicott, Pacific Coast created an implied easement over the road for the benefit of TL 606. For the reasons that follow, we conclude that plaintiffs have the better argument, and, therefore, reverse the trial court's summary judgment ruling.

## II. ANALYSIS

The parties agree with one principle underlying their dispute: A partition plat that depicts a roadway can, in appropriate circumstances, give rise to an easement—express or implied—in that roadway. *See, e.g., Bloomfield III*, 224 Or App at 446 (concluding that plat depicting a "private walk way" gave rise to express easement in that walkway). Where the parties disagree, however, is in their assessment of what circumstances the trial court was required to consider in determining whether an implied easement existed in this case. As noted above, defendants urge us to apply a categorical rule that, "[w]hen a landowner plats property and conveys lots by reference to the plat, the purchaser of the lot acquires by implication an easement in all streets, parks, or other open areas shown on the plat." Plaintiffs, in contrast, advocate a more nuanced approach. In plaintiffs' view, the depiction of a road on a plat is merely one of the factors, among others, that are relevant in determining whether the conveyance of a neighboring property by reference to that plat also conveys an easement in the road. Ultimately, we agree with plaintiffs' view of the law.

A. *Implied Easements*

As plaintiffs note, defendants' stated theory of an "easement implied from reference to a plat" evokes a larger body of law concerning implied easements generally. We recently summarized that law in *Eagles Five, LLC v. Lawton*, where we explained:

"'[A]n easement may be created by implication in favor of either the grantor or grantee' of property. *Cheney*[, 259 Or at 118]. Such an easement arises as an inference of the intention of the parties to a conveyance of land based on the circumstances existing at the time of the conveyance, *see Fischer v. Walker*, 246 Or App 589, 598, 266 P3d 178 (2011), and must be established by clear and convincing evidence, *Thompson v. Schuh*, 286 Or 201, 203, 593 P2d 1138 (1979). *'Although there are many factors to consider, the essential question is whether a reasonable purchaser would [expect] the easement under the circumstances in which he or she purchased the land.'* *Garrett v. Mueller*, 144 Or App 330, 341, 927 P2d 612 (1996). Among the factors used to evaluate whether an easement by implication has been created

are 'the claimant's need for the easement, the manner in which the land was used before its conveyance, and the extent to which the manner of prior use was or might have been known to the parties.' *Penny v. Burch*, 149 Or App 15, 19, 941 P2d 1049 (1997); *see Fischer*, 246 Or App at 598; *see also Cheney*, 259 Or at 118-19 (listing factors considered important in determining whether the circumstances surrounding a conveyance of land imply an easement). The factors to be considered 'are variables rather than absolutes and [n]one can be given a fixed value.' [*Cheney*, 259 Or] at 119 (internal quotation marks omitted)."

250 Or App 413, 424, 280 P3d 1017 (2012) (first and third alterations in original; second and fourth alterations added; emphasis added; footnote omitted).

In determining whether an easement has been created by implication, Oregon courts have traditionally considered, among other factors, the following:

"(a)   whether the claimant is the conveyor or the conveyee,

"(b)   the terms of the conveyance,

"(c)   the consideration given for it,

"(d)   whether the claim is made against a simultaneous conveyee,

"(e)   the extent of necessity of the easement to the claimant,

"(f)   whether reciprocal benefits result to the conveyor and the conveyee,

"(g)   the manner in which the land was used prior to its conveyance, and

"(h)   the extent to which the manner of prior use was or might have been known to the parties."

*Cheney*, 259 Or at 118-19 (internal quotation marks omitted); *see also id.* at 118 (noting that factors are set forth as "important" in the *Restatement (First) of Property* § 476 (1944), first approved by the Supreme Court in *Rose et ux. v. Denn et ux.*, 188 Or 1, 18-19, 212 P2d 1077, *reh'g den*, 188 Or 26, 213 P2d 810 (1950), and *Dressler et al. v. Isaacs et al.*, 217 Or 586, 597-99, 343 P2d 714 (1959)). As the Supreme Court

explained in *Cheney*, no one factor controls. *Id.* at 119 (stating that the factors are "variables rather than absolutes" and that no one factor "can be given a fixed value" (internal quotation marks omitted)). And, as we noted in *Eagles Five, LLC*, "there is no legal obligation on the court to make explicit findings or otherwise set forth and discuss each factor." 250 Or App at 424 n 6.

B.  *Defendants' Theory—"Easement Implied from Reference to a Plat"*

As discussed above, the trial court expressly rejected plaintiffs' argument that it was required to consider the *Cheney* factors in determining whether defendants had an implied easement to use the disputed road. The court appears to have instead adopted defendants' more narrow focus, whereby Pacific Coast's conveyance of TL 606 to Endicott by reference to the 1999 partition plat was itself sufficient to establish the existence of an implied easement. In support of that theory of an "easement implied from reference to a plat," defendants rely heavily on Oregon law governing implied dedications. Accordingly, we consider that body of law and its potential implications for this case.

A "dedication" is "an appropriation of land by the owner for a public use." *Security & Invest. Co. v. Oregon City*, 161 Or 421, 432, 90 P2d 467 (1939). For example, a private property owner may dedicate land to be used as a public roadway. *See id.* at 433. Common-law dedications are based on principles of estoppel. *Tualatin Development v. Dept. of Rev.*, 256 Or 323, 328, 473 P2d 660 (1970); *Menstell*, 125 Or at 169-70 (on rehearing). A common-law dedication may be either express or implied, *Mid-County Cem. Dist. v. Thomason*, 267 Or 637, 643, 518 P2d 174 (1974), and typically arises when members of the public rely on a property owner's representations that land has been opened up for public use. *See, e.g.*, *Carter*, 4 Or at 346 (discussed below).[1]

---

[1] Dedications and easements may also be created by and subject to various statutory procedures. *See, e.g.*, ORS 92.090(2) - (3) (requiring restrictions related to public and private streets to be identified on plat before local government may approve subdivision or partition); ORS 92.175 (identifying process for statutory dedication to city or county of land for public purposes). We have not been asked to consider what, if any, effect the provisions of ORS chapter 92 or related statutes may have on our analysis.

The Supreme Court first articulated the law of implied dedications in *Carter*, 4 Or at 345-46. In that case, the plaintiffs claimed fee simple title to two of the Portland "Park Blocks," and disputed the defendant's claim that the blocks had previously been dedicated as parkland for the public's benefit. *Id.* at 340. Years before, the previous owners of the Park Blocks had platted sections of the city, and the resulting plats designated those blocks as public parks. *Id.* at 344. One landowner subsequently sold surrounding lots and represented to prospective purchasers that the lots were adjacent to public parks. *Id.* When that landowner later tried to convey the Park Blocks themselves, litigation predictably ensued. *Id.* at 342. On review, the Supreme Court concluded that the Park Blocks could not be sold, because they had been dedicated to public use by their designation as parkland in the earlier plats. *Id.* at 352.

In reaching that conclusion, the Supreme Court stated:

> "[I]t is well settled, by the weight of authority, that a sale of lots or blocks with reference to a given map or plat describing lots and blocks as bounded by streets, will amount to an immediate and irrevocable dedication of the streets. The same doctrine applies to public squares and parks, and the dedication may be established in the same manner as in [the] case of streets and alleys."

*Id.* at 345 (internal citations omitted). The court also stated:

> "We are of [the] opinion that if one owning land * * * lays out thereon a town, and makes and exhibits a plan thereof with spare ground marked as streets, alleys, public squares or parks, and sells lots with clear reference to that plan or map, the purchasers of the lots acquire as appurtenant thereto every easement, privilege and advantage which the plan or map represents as part of the town."

*Id.* at 346. Here, defendants latch onto that statement in *Carter* regarding implied dedications and argue that it supports their view that, when a plat depicts a road—at least if neighboring property is conveyed by reference to that plat— it necessarily creates an implied easement.

That argument stretches *Carter* well beyond its intended reach. Cases following *Carter* recognized that the

relevance of a plat *depicting* land set aside for a particular use lies in its probative value regarding the plattor's intent to *dedicate* the land to that use. Thus, rather than provide a categorical rule whereby a plattor's intent to dedicate land to a particular use is presumed, *Carter* and its progeny have established that courts must determine that intent on a case-by-case basis. For example, in *Steel v. City of Portland*, 23 Or 176, 183, 31 P 479 (1892), a case factually similar to *Carter*, the court concluded that, by platting a large tract of land, labeling part of the tract a "park" on the plat, and then selling lots by reference to that plat, a property owner had dedicated the disputed space to the public to be used as a park. *Id.* at 182-83. Acknowledging *Carter*, the court explained the significance of the plat designation as follows:

> "[T]he law is well settled, that where the owner of land lays out and establishes a town and makes and exhibits a map or plan thereof, with lots, blocks, and streets marked thereon, and sells and conveys lots by reference to such plan or map, he thereby dedicates to the public the streets and public places thereon; and if upon such plan he has designated a space or block as a public park, such space or block is as fully dedicated to public use as are the streets delineated thereon. * * * There is no difference in the principles applicable to the dedication of public streets and public squares or parks; *in each case the dedication is to be considered with reference to the use to which the property may be applied or the purpose for which the dedication is made, and this may be ascertained by the designation which the owner gives to land upon the map or plat, whether he calls it a 'street,' 'square,' or 'park.'*"

*Id.* at 183 (emphasis added; internal citations omitted). Thus, while some designations—*e.g.*, "street," "square," or "park"—may readily imply a public dedication, what ultimately matters is whether the plattor intended to make a dedication, and not merely whether the disputed property has been delineated on a plat. *Id.* at 184-85; *see also Eugene v. Lowell*, 72 Or 237, 240-41, 143 P 903 (1914) (distinguishing *Steel* and observing that whether plattor intended marking on plat to evince dedication is case-specific factual determination); *McCoy v. Thompson*, 84 Or 141, 149, 164 P 589 (1917) (looking to plat and accompanying writing to determine whether plattor intended to dedicate public street);

*RealVest Corp. v. Lane County*, 196 Or App 109, 121, 100 P3d 1109 (2004) ("For an implied dedication of land to the public to occur, there must be a clear and unequivocal manifestation by the owner of the property of an intent to devote it to public use.") (Citing *Muzzy v. Wilson*, 259 Or 512, 518, 487 P2d 875 (1971).). The court in *Steel* concluded that, in the context of a plat of a *city*, it was inferable that the word "park" signified that the plattor intended the park to be a *public* park. *Steel*, 23 Or at 184.

Similarly, in *Kuck*, 58 Or at 555 (on rehearing), which defendants also rely upon, the court again emphasized that, in evaluating common-law dedications, the determining factor is the ostensible dedicator's intent. But, to protect those who might rely on the dedicating party's representations or conduct, objective manifestations of intent control that determination, rather than the dedicating party's subjective intent. *Id.* In that regard, both the contents of any plat and the surrounding circumstances are relevant to the court's determination of the plattor's intent. *Id.* at 556 (considering, among other matters, longtime layout of neighborhood and owner's conduct in connection with the surrounding circumstances).

While *Carter*, *Steel*, and *Kuck* all concerned the dedication of land for the benefit of the public, the Supreme Court extended its analysis of implied public dedications to implied private servitudes in *Menstell*, 125 Or at 159-65. The dispute in *Menstell* involved setback lines in the Ladd's Addition subdivision in Portland. *Id.* at 158-59. All of the lots in the subdivision were sold with reference to the subdivision plat, which designated setbacks for each lot. *Id.* at 159. In concluding that those setback lines bound future owners, the Supreme Court relied on *Carter* and its progeny for the general proposition that a subdivision plat can create a servitude benefitting the subdivision as a whole. *Id.* at 159-63. As it had in *Carter* and other implied dedication cases, the court looked for objective evidence of the plattor's intent—in *Menstell*, the intent to create a restrictive covenant—including the content of the plat itself, as well as the specific wording and context of the dedicatory instrument. *Id.* at 164-65; *id.* at 172 (on rehearing). Thus, while *Menstell*, like its predecessors, illustrates how a plat may

provide evidence of intent, that case adheres to the general rule that intent—rather than mere placement on a plat—determines whether a property interest has been created.[2]

We relied on those general principles from *Carter* and *Menstell* when considering an implied easement claim in our more recent *Bloomfield* cases, which, like this case, involved beach access. *See Bloomfield v. Weakland*, 193 Or App 784, 92 P3d 749 (2004) (*Bloomfield I*), *aff'd on other grounds*, 339 Or 504, 123 P3d 275 (2005) (*Bloomfield II*); *Bloomfield III*, 224 Or App 433. In that litigation, a partition plat had depicted, as a "Private Walk Way," a path that provided beach access across the defendant's property. *Bloomfield I*, 193 Or App at 787. In *Bloomfield I*, the defendant's neighbors sought a declaration that, by virtue of the path's depiction on the partition plat, they had acquired an implied easement over the walkway. *Id.* The trial court agreed, granting summary judgment to the plaintiffs. *Id.* at 791-92. On appeal, we reversed. We concluded that, because the existence of an implied easement turned on unresolved questions of fact regarding the grantor's intent, those issues of material fact precluded summary judgment. *Id.* at 798.

In reaching that conclusion, we summarized the law of implied easements as follows:

"An implied easement is an easement that exists by inference when the circumstances that exist at the time of severance of a parcel establish that the grantor of the parcel intended to create an easement. Implied easements are disfavored and must be established by clear and convincing evidence. The provisions of an instrument relied upon to create an implied easement are to be strictly construed, with any doubt being resolved in favor of the free use of the land. * * * *The determination of the existence of an implied easement is inherently factual and involves a weighing of numerous factors*, including those listed in the [first] *Restatement of Property* § 476 (1944). *Thompson*, 286 Or at 212 (listing factors)."

---

[2] In implied dedication cases, the relevant intent is that of the purported dedicator, who most often is also the plattor. *See, e.g., Carter*, 4 Or at 345. In implied easement cases, on the other hand, the relevant intent is that of the purported grantor, who may or may not also be the plattor. *See, e.g., Bloomfield v. Weakland*, 193 Or App 784, 795, 92 P3d 749 (2004).

*Id.* at 795-96 (emphasis added; quotations marks and additional citations omitted). We observed that, as a general principle, "[p]lats referred to in deeds can give rise to implied easements. *See Carter*[, 4 Or 339]." *Id.* at 796. And, we acknowledged *Menstell*'s observation that, "when a deed refers to a plat, '[i]t seems well settled that the deed and the plat are to be read together and many authorities hold that whatever appears upon the plat is to be considered as a part of the deed.'" *Id.* at 796 (quoting *Menstell*, 125 Or at 178 (on rehearing)).

However, we rejected the plaintiffs' suggestion that we should distinguish easements implied by reference to a plat from implied easements in general. *Id.* at 796-97. Relying on the *Restatement (Third) of Property (Servitudes)* § 2.13 (2000),[3] the plaintiffs had urged us to adopt a concise rule "that deed descriptions of land that refer to a plat showing areas for common use or benefit imply the creation of a servitude for the benefit of the grantee, unless a different intent is expressed or implied by the circumstances." *Id.* at 796. Although the plaintiffs echoed the reasoning of *Kuck*, and pointed out that "designations of public areas in plats cause reliance in buyers who acquire property with the expectation that the property will have certain characteristics that enhance its value," we found that categorical approach unsuitable under the circumstances. *Id.* As we explained, the "[p]laintiffs' argument concerning the implications to be drawn from designations of common areas in a plat beg[ged] the very question at issue"—whether the walkway labeled on the plat was, in fact, intended to be set aside for *common* use. *Id.* at 797. And, as noted, that genuine issue of material fact regarding the grantor's intent precluded summary judgment. *Id.* at 797-98.

C.   *The Mere Depiction of a Road on a Plat Does Not Create an Easement*

With that background in mind, we have little difficulty concluding that an alleged easement "implied from reference to a plat," as defendants raised in their first

---

[3] In *Bloomfield I*, we incorrectly identified this authority as the *Restatement (Second) of Property*.

counterclaim, requires a court to apply the law applicable to implied easements, generally, rather than the *per se* theory that defendants advanced and that the trial court apparently accepted here. While perhaps instructive, *Carter, Menstell,* and the other cases that defendants cite simply do not support their position. First, as our foregoing review of implied dedication cases demonstrates, those cases are poor analogs for this one. They typically have involved plats depicting cities, towns, or commercial subdivisions, where the intent to provide streets, alleyways, squares, or parks for public, rather than private, purposes, could readily be gleaned from the plats themselves. *See Carter,* 4 Or at 346 (if property owner "lays out * * * a town" and marks public spaces on a plat and then sells lots "with clear reference" to that plat, purchasers acquire rights to use those public spaces that the plat "represents as part of the town"); *Kuck,* 58 Or at 552 (same); *Menstell,* 125 Or at 181-82 (on rehearing) (applying those principles to determine whether plattor intended to create public and private easements in commercial subdivision). This case, on the other hand, involves a purported private easement, appurtenant to a single lot, which is alleged to have arisen from a private, small-scale, partition. Thus, to the extent that *Carter* and other implied dedication cases might, as defendants suggest, support a more categorical approach, those cases have little persuasive value here.

Second, as discussed above, cases following *Carter* have consistently held that a plat does not give rise to an implied interest unless there is persuasive evidence that the ostensible creator of that interest in fact intended to create the interest—even though, in some cases, that evidence might come directly from the plat itself. *See, e.g., Steel,* 23 Or at 184-85; *Bloomfield I,* 193 Or App at 795 (looking to plat for evidence that grantor of parcel intended to create implied easement); *cf. Bloomfield III,* 224 Or App at 446-48 (citing *Carter* and *Menstell*; searching plat for clues regarding parties' intent before upholding determination that grantor conveyed *express* easement). And, when other evidence of intent is available, it is the court's responsibility to weigh that evidence. *See Bloomfield I,* 193 Or App at 796 (contemplating a "weighing" of evidence).

Furthermore, defendants' argument based on *Carter* and its progeny is not materially different from the argument that we rejected in *Bloomfield I,* where the plaintiffs relied on section 2.13 of the third *Restatement of Property. Bloomfield I,* 193 Or App at 796-97 (rejecting argument that easements implied by a plat are categorically different from other implied easements). Moreover, in *Bloomfield I,* we reasoned that the fact-specific inquiry that the plaintiffs urged us to forgo in that case was essential to our determination of whether the walkway depicted on the plat at issue was "in fact an area designated for common use." *Id.* at 797. Defendants have offered no meaningful distinction between *Bloomfield I* and this case and, despite our own review, we have unearthed none. Accordingly, we conclude that, as in that case, "[t]he determination of the existence of an implied easement [in this case] is inherently factual and involves a weighing of numerous factors, including those listed in the [first] *Restatement of Property." Id.* at 796. In other words, the trial court was required to engage in the very approach that plaintiffs urged it to apply.

### D. *Plaintiffs' Assignment of Error*

We turn, then, to the question raised by plaintiffs' assignment of error—whether the trial court erred in granting summary judgment on defendants' first counterclaim, because unresolved questions of fact precluded the conclusion that defendants had established the creation of an implied easement as a matter of law. When reviewing a grant of summary judgment, we "examine[] the summary judgment record, in accordance with ORCP 47 C, to determine whether the pleadings and any supporting documents on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." *Bresee Homes, Inc. v. Farmers Ins. Exchange,* 353 Or 112, 114, 293 P3d 1036 (2012); *see also* ORCP 47 C. "No genuine issue as to a material facts exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion * * *." ORCP 47 C.

Plaintiffs argue that the trial court erred in concluding that defendants were entitled to judgment, because, other than the visual depiction of the disputed road on the 1999 plat, the trial court failed to consider *any* evidence relevant to the existence of an implied easement. That is because, in plaintiffs' view, the court erroneously relied on defendants' inaccurate statement of the applicable law. While we disagree with plaintiffs' assertion that the court failed to consider *any* other relevant evidence, we agree that the court based its judgment on an incorrect interpretation of the law. Accordingly, we conclude that the court erred in granting summary judgment.

As we have just explained, in determining whether defendants had an implied easement over the disputed road, the court was required to determine whether the circumstances that existed at the time that defendants' parcel was created "establish that the grantor of the parcel intended to create an easement." *Bloomfield I*, 193 Or App at 795. In turn, that inquiry "involves a weighing of numerous factors, including those listed in the [first] *Restatement of Property.*" *Id.* Here, however, the trial court declined to weigh those *Cheney* factors. Instead, the court concluded that those factors were not relevant.

Due to its apparent belief that it needed to consider only the 1999 partition plat and the 2004 conveyance of defendants' parcel in reference to that plat, the trial court sharply limited its inquiry. Thus, the only other evidence that it appears to have considered was that the disputed road joined with the 1990 Coos Bay Lumber property easement, and that the two roads together provided access to the dunes. The court refused to consider other evidence of the grantor's intent, including whether occupants of defendants' parcel had previously used the road, whether there was any necessity to use the road, or any of the other *Cheney* factors. That was error. Although the court was not required to expressly make findings or otherwise discuss each factor, *Eagles Five, LLC*, 250 Or App at 424 n 6, it was not free to simply disregard relevant evidence of those factors.

## III.  CONCLUSION

The trial court relied on an incorrect interpretation of the law when it determined that the conveyance of

defendants' parcel by reference to a partition plat depicting a private road had created an implied easement over that road. Because the court failed to consider other relevant evidence in the summary judgment record, the court incorrectly concluded that defendants had established an implied easement, as a matter of law, and, therefore, erred in granting summary judgment on that issue. *See McLain v. Maletis Beverage*, 200 Or App 374, 380, 115 P3d 938 (2005) (reversing and remanding because trial court granted summary judgment based on incorrect legal premise).

Reversed and remanded.